## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LATRICIA PELT, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>HENRY FORD HEALTH SYSTEM,<br><br>*Defendant.* | **Case No. _____**<br><br><br>**COMPLAINT – CLASS ACTION**<br><br><br>**JURY DEMAND** |

Plaintiff Latricia Pelt ("Plaintiff"), individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendant Henry Ford Health System ("Henry Ford Health" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## **INTRODUCTION**

1.      Plaintiff brings this class action against Defendant for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI"). According to Henry Ford Health, the PII and PHI may have included patients' names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers.

2.     Defendant failed to comply with industry standards to protect information systems that contain PII and PHI, and failed to provide adequate notice to Plaintiff and other Class Members that their PII and PHI had been compromised. Plaintiff seeks, among other things, orders requiring Defendant to fully and accurately disclose the nature of the information that has been compromised and to adopt sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.     On June 6, 2023, Henry Ford Health reported to U.S. Department of Health and Human Services Office for Civil Rights that its email systems had been the subject of a hacking incident, and that 500 patients were affected.

4.     On or around July 14, 2023, Henry Ford Health began mailing notice letters to the affected patients. Those notice letters do not indicate that Henry Ford Health intends to offer those patients any form of relief that might reduce the likelihood of their data being misused.

5.     On July 17, 2023, Henry Ford Health disclosed that approximately 168,000 patients were in fact affected. On or around the same date, Henry Ford Health posted on its website a brief notice disclosing that the incident occurred on March 30, 2023. But Henry Ford Health did not determine the incident involved PHI until May 16, 2023.

6.      The notice also includes no indication Henry Ford Health intends to offer those patients any form of relief that might reduce the likelihood of their data being misused. Henry Ford Health is only "implementing additional security measures and providing additional training to employees about recognizing the signs of suspicious email and what to do if they receive one."

7.      But Henry Ford Health made a substantially similar representation after a breach of its email systems in 2017. Henry Ford Health could have prevented this theft had it implemented and maintained adequate data security measures and protocols in order to secure and protect its patients' data in the wake of that incident.

8.      Plaintiff and Class Members would not have provided their PII and PHI to Henry Ford Health if they had known that Henry Ford Health would breach its promises and agreements by failing to ensure that it used adequate security measures.

9.      Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were stolen in the Data Breach. Plaintiff seeks remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief including substantial improvements to Henry Ford Health's data security policies and practices.

## PARTIES

10.     Plaintiff Latricia Pelt resides in Detroit, Michigan. Ms. Pelt has been a patient at Henry Ford Health facilities over the course of approximately 20 years. In a letter dated July 14, 2023, Henry Ford Health disclosed to Ms. Pelt that her PII and/or PHI was accessible as a result of the Data Breach. The letter further disclosed that "[t]he information stored on the affected email account may have included the following: Your name, gender, date of birth, age, lab results, procedure type, diagnosis, date of service, telephone number, medical record number and/or internal tracking number." *See* Ex. 1.

11.     Defendant Henry Ford Health System is a Michigan corporation, with its principal place of business in Detroit, Michigan.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as Henry Ford Health is a citizen of a state different from that of at least one Class Member.

13.     This Court has personal jurisdiction over Henry Ford Health because it is a resident of the State of Michigan.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this District. Venue is additionally proper because Henry Ford Health transacts business and may be found in this District.

## FACTUAL ALLEGATIONS

### The Data Breach

15.     Henry Ford Health employs 33,000 people, and "serves a growing number of customers across 250+ locations throughout Michigan including five acute care hospitals, two destination facilities for complex cancer and orthopedics and sports medicine care, three behavioral health facilities, primary care and urgent care centers."[1] Due to the nature of these the services it provides, Henry Ford Health acquires and electronically stores patient PII and PHI. As a healthcare provider, Henry Ford Health is required to ensure that PII and PHI are not disclosed or disseminated to unauthorized third parties without its patients' express written consent.

16.     Henry Ford Health has long been well-versed as to the threat hackers pose to confidential medical information. In December of 2017, Henry Ford Health

---

[1] About Henry Ford Health, available at https://www.henryford.com/about (last visited July 19, 2023).

5

disclosed a data breach involving the PHI of nearly 20,000 patients after
"[s]omeone gained access to or stole the e-mail credentials of a group of
employees."[2]

17.     On June 6, 2023, Henry Ford Health reported to U.S. Department of
Health and Human Services Office for Civil Rights ("OCR") that its email systems
had been the subject of hacking incident, and that 500 patients were affected.

18.     On July 17, 2023, Henry Ford Health disclosed that approximately
168,000 patients were in fact affected. On or around the same date, Henry Ford
Health posted on its website a brief notice disclosing that the incident occurred on
March 30, 2023. But Henry Ford Health did not determine the incident involved
PHI until May 16, 2023.

19.     Henry Ford Health has not updated its disclosure to OCR. Nor has it
apparently made any disclosure to any of several states in which affected patients
may be located.

20.     Henry Ford Health's disclosures are otherwise deficient. They do not
include basic details concerning the Data Breach, including, but not limited to, why
PII and PHI were stored on systems without adequate security, the deficiencies in

---

[2] Nearly 20,000 patients compromised by Henry Ford Health System data
breach, Detroit Free Press, Dec. 6, 2017, available at
https://www.freep.com/story/news/local/michigan/detroit/2017/12/06/henry-ford-
hospital-data-breach/926163001/ (last visited July 19, 2023).

the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Henry Ford Health knows about the degree to which the data has been disseminated.

21.     Henry Ford Health has not nearly disclosed all the details of the Data Breach and its investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Henry Ford Health has taken to secure the PII and PHI still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Henry Ford Health has proper measures in place to prevent similar incidents from occurring in the future.

### Henry Ford Health's Privacy Policies

22.     The Health Insurance Portability and Accountability Act ('HIPAA') requires that Henry Ford Health maintain strict privacy practices. Henry Ford Health's website acknowledges that "[w]ith information broadly held and transmitted electronically, the Privacy & Security Rule under the Health Insurance Portability and Accountability Act of 1996 (HIPAA) provides clear standards for protecting and securing patient information."[3]

---

[3] Patient Privacy & Security, available at https://www.henryford.com/visitors/privacy (last visited July 19, 2023).

23.    Henry Ford Health's Notice of Privacy Practices acknowledges that it is "required by HIPAA to make sure that medical information that identifies you is kept private … and to follow the terms of the Notice that is currently in effect."[4]

24.    The  Notice of Privacy Practices further provides that "[a]s permitted by HIPAA and Michigan State law, we may use or disclose your medical information without obtaining prior authorization from you to carry out the activities detailed below." Those "activities" do not encompass the Data Breach."[5]

25.    Henry Ford Health's "Privacy Fact Sheet" identifies "Types of security threats faced today by health care providers," which include "[h]acker and disgruntled employee abuse."[6]

### The Healthcare Sector is a Primary Target for Data Breaches

26.    Henry Ford Health was on notice that companies in the healthcare industry are susceptible targets for data breaches.

27.    Henry Ford Health was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to

---

[4] Notice of privacy practices, available at
https://www.henryford.com/visitors/privacy/practices (last visited July 19, 2023).

[5] *Id.*

[6] Privacy Fact Sheet, available at
https://www.henryford.com/visitors/privacy/fact-sheet (last visited July 19, 2023).

companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[7]

28.     The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[8], to 1,638 in 2021.[9] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[10]

---

[7] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last accessed Mar. 14, 2023).

[8] See Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Mar. 14, 2023).

[9] See Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last accessed Mar. 14, 2023).

[10] Id. at 62.

29.     At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[11] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[13]

30.     Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security

---

[11] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last accessed Mar. 14, 2023).

[12] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last accessed Mar. 14, 2023).

[13] *Id.*

leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[14] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[15]

31.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[16]

---

[14] *2019 HIMSS Cybersecurity Survey* (available at https://www.himss.org/sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf) (last accessed Mar. 14, 2023).

[15] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last accessed Mar. 14, 2023).

[16] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-

32.     As a major healthcare provider, Henry Ford Health knew, or should have known, the importance of safeguarding the patients' PII and PHI entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Henry Ford Health's patients because of a breach. Henry Ford Health failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

**Henry Ford Health Stores Plaintiff's and Class Members' PII and PHI**

33.     Henry Ford Health obtains and stores a massive amount of its patients' PII and PHI. As a condition of engaging in health services, Henry Ford Health requires that patients entrust it with highly confidential PII and PHI.

34.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Henry Ford Health assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

35.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and, as Henry Ford Health's current and former patients, they rely on Henry Ford Health to keep this information

---

assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Mar. 14, 2023).

confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

36.     Henry Ford Health was aware that the PII and PHI it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

37.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[17] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[18]

38.     PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

---

[17] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last accessed Mar. 14, 2023).

[18] Center for Internet Security, *Data Breaches: In the Healthcare Sector* (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last accessed Mar. 14, 2023).

39.     Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[19]

40.     The ramifications of Henry Ford Health's failure to keep its patients' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

41.     Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

---

[19] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last accessed Mar. 14, 2023).

42.     Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened.[20] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[21]

43.     Henry Ford Health knew, or should have known, the importance of safeguarding its patients' PII and PHI entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Henry Ford Health's patients because of a breach. Henry Ford Health failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiff and Class Members
to Identity Theft and Out-of-Pocket Losses**

44.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They

---

[20] *See* Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last accessed Mar. 14, 2023).

[21] Experian, The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last accessed Mar. 14, 2023).

are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

45.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Henry Ford Health's policies and practices with respect to maintaining the security of its patients' PII and PHI were reckless, or at the very least, negligent.

46.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Henry Ford Health's misfeasance.

47.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[22]

48.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

      a.   losing the inherent value of their PII and PHI;

---

[22]     2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last accessed Mar. 14, 2023).

b.  identity theft and fraud resulting from the theft of their PII and PHI;

c.  costs associated with the detection and prevention of identity theft;

d.  costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

e.  lowered credit scores resulting from credit inquiries following fraudulent activities;

f.  costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

g.  the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Henry Ford Health's Lax Security Violates HIPAA**

49.     Henry Ford Health had a non-delegable duty to ensure that all PHI it collected and stored was secure.

50.     Henry Ford Health is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

51.     These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

52.     HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

53.     HIPAA requires that Henry Ford Health implement appropriate safeguards for this information.

54.     Despite these requirements, Henry Ford Health failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, Henry Ford Health failed to:

a. maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

b. adequately protect Plaintiff's and Class Members' PHI;

c. ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

d. implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

e. implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

f. implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

g. protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules

regarding individually identifiable health information, in violation of

45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by

its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of its workforce effectively on the policies and

procedures with respect to PHI as necessary and appropriate for the

members of its workforce to carry out their responsibilities and to

maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

55.    Henry Ford Health failed to comply with its duties under HIPAA

despite being aware of the risks associated with unauthorized access to Plaintiff's

and Class Members' PHI.

## Henry Ford Health Violated FTC Guidelines

56.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45,

prohibited Henry Ford Health from engaging in "unfair or deceptive acts or

practices in or affecting commerce." The Federal Trade Commission ("FTC") has

concluded that a company's failure to maintain reasonable and appropriate data

security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See,*

*e.g., Fed. Trade Comm'n  v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir.

2015).

57.     The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[23]

58.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[24] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

59.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[25]

---

[23] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last accessed Mar. 14, 2023).

[24] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last accessed Mar. 14, 2023).

[25]     FTC, *Start With Security*, *supra*.

60.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

61.     Henry Ford Health failed to properly implement basic data security practices. Henry Ford Health's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

62.     Henry Ford Health was at all times fully aware of its obligation to protect its patients' PII and PHI because of its position as a healthcare provider. Henry Ford Health was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

63.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a National Class (the "Class") as defined below:

> All persons in the United States whose PII and/or PHI was exposed by the Data Breach that was disclosed by Henry Ford Health on or around June 6, 2023.

64.    Plaintiff further seeks certification of Michigan Subclass defined as

follows:

> All persons in Michigan whose PII and/or PHI was exposed by the
> Data Breach that was disclosed by Henry Ford Health on or around
> June 6, 2023.

65.    Excluded from the Class are Henry Ford Health, any entity in which

Henry Ford Health has a controlling interest, and Henry Ford Health's officers,

directors, legal representatives, successors, subsidiaries, and assigns. Also

excluded from the Class are any judicial officer presiding over this matter,

members of their immediate family, and members of their judicial staff.

66.    Plaintiff reserves the right to modify or amend the definition of the

proposed Class as additional information becomes available to Plaintiff.

67.    **Numerosity:** The Class Members are so numerous that individual

joinder of all Class Members is impracticable. Henry Ford Health has disclosed

that the Data Breach affected approximately 168,000 patients. All Class Members'

names and addresses are available from Henry Ford Health's records, and Class

Members may be notified of the pendency of this action by recognized, Court-

approved notice dissemination methods.

68.    **Commonality:** There are questions of law and fact common to the

Class, which predominate over any questions affecting only individual Class

Members. These common questions of law and fact include, without limitation:

a.  Whether and to what extent Henry Ford Health had a duty to protect the PII and PHI of Class Members;

b.  Whether Henry Ford Health was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

c.  Whether Henry Ford Health had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

d.  Whether Henry Ford Health took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

e.  Whether Henry Ford Health failed to adequately safeguard the PII and PHI of Class Members;

f.  Whether Henry Ford Health failed to implement and maintain reasonable security policies and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

g.  Whether Henry Ford Health adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

h.  Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or punitive damages because of Henry Ford Health's wrongful conduct;

    i.   Whether Plaintiff and Class Members are entitled to restitution because of Henry Ford Health's wrongful conduct;

    j.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

    k.   Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

69.   **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Henry Ford Health. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Henry Ford Health's common misconduct. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

70.   **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Henry Ford Health to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation.

Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

71. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Henry Ford Health has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Henry Ford Health's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Henry Ford Health's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

72. **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like

26

Henry Ford Health. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

73.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Henry Ford Health would necessarily gain an unconscionable advantage in non-class litigation, since Henry Ford Health would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

74.    The litigation of Plaintiff's claims is manageable. Henry Ford Health's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no

significant manageability problems with maintenance of this lawsuit as a class action.

75.     Adequate notice can be given to Class Members directly using information maintained in Henry Ford Health's records.

76.     Unless a class-wide injunction is issued, Henry Ford Health may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Henry Ford Health may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Henry Ford Health may continue to act unlawfully as set forth in this Complaint.

## COUNT I
## <u>NEGLIGENCE</u>
**(on behalf of Plaintiff and the National Class)**

77.     Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

78.     As a condition of their utilizing Henry Ford Health's services, patients were obligated to provide Henry Ford Health with certain PII and PHI, including their dates of birth, personal medical information, and other PII and PHI.

79.     Plaintiff and the Class Members entrusted their PII and PHI to Henry Ford Health on the premise and with the understanding that Henry Ford Health would safeguard their information and not disclose that information to unauthorized third parties.

80.    Henry Ford Health has full knowledge of the sensitivity of PII and PHI and the types of harm that Plaintiff and Class Members could and would suffer if PII and PHI were wrongfully disclosed.

81.    Henry Ford Health knew or reasonably should have known that the failure to exercise due care in the collection, storage, and use of patients' PII and PHI involved an unreasonable risk of harm to Plaintiff and Class Members.

82.    Henry Ford Health had a duty to exercise reasonable care in safeguarding, securing, and protecting Plaintiff's and Class Members' PII and PHI from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Henry Ford Health's security protocols to ensure that Plaintiff's and Class Members' information in Henry Ford Health's possession was adequately secured and protected, and that employees tasked with maintaining such information were adequately trained as to proper measures regarding the security of patients' PII and PHI.

83.    Henry Ford Health had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

84.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or

practice by businesses, such as Henry Ford Health, of failing to use reasonable measures to protect PII and PHI. The FTC publications and orders described above also form part of the basis of Henry Ford Health's duty in this regard.

85.     Henry Ford Health violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI and failing to comply with relevant industry standards. Henry Ford Health's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

86.     A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly considering the growing number of data breaches of healthcare providers.

87.     Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Henry Ford Health knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII and PHI, the importance of providing adequate security for that information, and that Henry Ford Health had inadequate employee training and education and information technology security protocols in place to secure Plaintiff's and Class Members' PII and PHI.

88.     Henry Ford Health's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Henry Ford Health's misconduct included, but was not limited to, its failure to take the steps necessary to prevent the Data Breach. Henry Ford Health's misconduct also included its decisions not to comply with industry standards for the safekeeping and disclosure of Plaintiff's and Class Members' PII and PHI.

89.     Plaintiff and Class Members had no ability to protect their PII and PHI that was in Henry Ford Health's possession.

90.     Henry Ford Health was in a position to protect against the harm that Plaintiff and Class Members suffered as a result of the Data Breach.

91.     Henry Ford Health had and continues to have a duty to adequately disclose that Plaintiff's and Class Members' PII and PHI within Henry Ford Health's possession might have been compromised, how it was compromised, and precisely the types of information that were compromised and when it was compromised. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PHI by unauthorized parties.

92.     Henry Ford Health has admitted that Plaintiff's and Class Members' PII and PHI was wrongfully disclosed to unauthorized parties because of the Data Breach.

93.     Henry Ford Health, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI during the period in which that information was within Henry Ford Health's possession or control.

94.     Henry Ford Health failed to heed industry warnings and alerts to provide adequate safeguards to protect patients' PII and PHI in the face of increased risk of theft.

95.     Henry Ford Health, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its patients' PII and PHI.

96.     Henry Ford Health, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

97.     But for Henry Ford Health's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII and PHI would not have been compromised.

98.     There is a close causal connection between Henry Ford Health's failure to implement security measures to protect its patients' PII and PHI and the

harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members. Unauthorized parties gained access to Plaintiff's and Class Members' PII and PHI as the proximate result of Henry Ford Health's failure to exercise reasonable care in safeguarding that information by adopting, implementing, and maintaining appropriate security measures.

99.    As a direct and proximate result of Henry Ford Health's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with the effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remains in Henry Ford Health's possession and is subject to further unauthorized disclosures so long as Henry Ford Health fails to undertake appropriate and adequate measures to protect that information; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest,

and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Henry Ford Health's services that Plaintiff and Class Members received.

100.   As a direct and proximate result of Henry Ford Health's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT II**
**NEGLIGENCE PER SE**
**(on behalf of Plaintiff and the National Class)**

101.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

102.   Pursuant to the FTC Act, 15 U.S.C. § 45, Henry Ford Health had a duty to provide adequate data security practices, including in connection with its sale of its services to Plaintiff's and Class Members' pediatric practices.

103.   Pursuant to HIPAA, 42 U.S.C. § 1302d, *et seq.*, Henry Ford Health had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' PII and PHI.

104.   Henry Ford Health breached its duties to Plaintiff and Class Members under the FTC Act and HIPAA, among other laws, by failing to provide fair,

reasonable, or adequate data security in connection with the sale and use of its services, to safeguard Plaintiff's and Class Members' PII/PHI.

105.   Henry Ford Health's failure to comply with applicable laws and regulations constitutes negligence per se.

106.   But for Henry Ford Health's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

107.   The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Henry Ford Health's breach of its duties. Henry Ford Health knew or should have known that it was failing to meet its duties, and that its breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII/PHI.

108.   As a direct and proximate result of Henry Ford Health's negligent conduct, Plaintiff and Class Members face an increased risk of future harm.

109.   As a direct and proximate result of Henry Ford Health's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT III
## BREACH OF CONFIDENCE
### (on behalf of Plaintiff and the National Class)

110.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

111.   Plaintiff and class members have an interest, both equitable and legal, in their Private Information that was conveyed to, collected by, and maintained by Henry Ford Health and that was accessed or compromised in the Data Breach.

112.   Henry Ford Health was provided with and stored private and valuable PHI related to Plaintiff and the Class, which it was required to maintain in confidence.

113.   Plaintiff and the Class provided Henry Ford Health with their personal and confidential PHI under both the express and/or implied agreement of Henry Ford Health to limit the use and disclosure of such PHI.

114.   Henry Ford Health owed a duty to Plaintiff and class members to exercise the utmost care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PHI in its possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons.

115.   Henry Ford Health had an obligation to maintain the confidentiality of Plaintiff's and class members' PHI.

116.   Plaintiff and class members have a privacy interest in their personal medical matters, and Henry Ford Health had a duty not to disclose confidential medical information and records concerning its patients.

117.   As a result of the parties' relationship, Henry Ford Health had possession and knowledge of confidential PHI and confidential medical records of Plaintiff and class members.

118.   Plaintiff's and class members' PHI is not generally known to the public and is confidential by nature.

119.   Plaintiff and class members did not consent to nor authorize Henry Ford Health to release or disclose their PHI to unknown criminal actors.

120.   Henry Ford Health breached the duties of confidence it owed to Plaintiff and class members when Plaintiff's and class members' PHI was disclosed to unknown criminal hackers.

121.   Henry Ford Health breached its duties of confidence by failing to safeguard Plaintiff's and class members' PHI, including by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement

37

information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its on privacy policies and practices published to its patients; (h) storing PHI and medical records/information in an unencrypted and vulnerable manner, allowing its disclosure to hackers; and (i) making an unauthorized and unjustified disclosure and release of Plaintiff and the class members' PHI and medical records/information to a criminal third party.

122. But for Henry Ford Health's wrongful breach of its duty of confidences owed to Plaintiff and class members, their privacy, confidences, and PHI would not have been compromised.

123. As a direct and proximate result of Henry Ford Health's breach of Plaintiff's and class members' confidences, Plaintiff and class members have suffered injuries, including:

   a. Loss of their privacy and confidentiality in their PHI;

   b. Theft of their Private Information;

   c. Costs associated with the detection and prevention of identity theft and unauthorized use of their Private Information;

d.   Costs associated with purchasing credit monitoring and identity theft protection services;

e.   Lowered credit scores resulting from credit inquiries following fraudulent activities;

f.   Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Henry Ford Health Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

g.   The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h.   Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Henry Ford Health with the mutual understanding that Henry Ford Health would safeguard Plaintiff's and class members' data against theft and not allow access and misuse of their data by others;

i.  Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Henry Ford Health's possession and is subject to further breaches so long as Henry Ford Health fails to undertake appropriate and adequate measures to protect Plaintiff's and class members' data;

j.  Loss of personal time spent carefully reviewing statements from health insurers and providers to check for charges for services not received, as directed to do by Henry Ford Health; and

k.  Mental anguish accompanying the loss of confidences and disclosure of their confidential and private PHI.

124. Additionally, Henry Ford Health received payments from Plaintiff and class members for services with the understanding that Henry Ford Health would uphold its responsibilities to maintain the confidences of Plaintiff's and class members' private medical information.

125. Henry Ford Health breached the confidence of Plaintiff and class members when it made an unauthorized release and disclosure of their confidential medical information and/or PHI and, accordingly, it would be inequitable for Henry Ford Health to retain the benefit at Plaintiff's and class members' expense.

126. As a direct and proximate result of Henry Ford Health's breach of its duty of confidences, Plaintiff and class members are entitled to damages, including

compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## COUNT IV
## BREACH OF EXPRESS CONTRACT
### (on behalf of Plaintiff and the National Class)

127.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

128.   Henry Ford Health's Privacy Policy and other representations regarding patient privacy created an express contractual obligation to safeguard and protect the sensitive information of Plaintiff and class members.

129.   The Privacy Policy also contractually promised that Henry Ford Health would only share Plaintiff's and class members' PII and PHI with certain authorized recipients in only a limited set of circumstances.

130.   Henry Ford Health breached these contractual duties by failing to adequately safeguard Plaintiff's and class members' PII and PHI, and by allowing it to be disseminated to unauthorized third parties.

131.   Plaintiff and class members substantially performed their part of the bargain.

132.   Henry Ford Health's breach of these contractual obligations caused damages to Plaintiff and class members, as set forth herein.

## COUNT IV
## <u>BREACH OF IMPLIED CONTRACT</u>
### (on behalf of Plaintiff and the National Class)

133.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

134.   When Plaintiff and class members provided their PII and PHI to Henry Ford Health, they entered into implied contracts with Henry Ford Health, under which Henry Ford Health agreed to take reasonable steps to protect Plaintiff's and class members' PII and PHI, comply with it statutory and common law duties to protect Plaintiff's and class members' PII and PHI, and to timely notify them in the event of a data breach.

135.   Henry Ford Health solicited and invited Plaintiff and class members to provide their PII and PHI as part of Henry Ford Health's provision of healthcare services. Plaintiff and class members accepted Henry Ford Health's offers and provided their PII and PHI to Henry Ford Health.

136.   When entering into implied contracts, Plaintiff and class members reasonably believed and expected that Henry Ford Health's data security practices complied with its statutory and common law duties to adequately protect Plaintiff's and class members' PII and PHI and to timely notify them in the event of a data breach.

137. Henry Ford Health's implied promise to safeguard PII and PHI is evidenced by, *e.g.*, the representations in Henry Ford Health's Notice of Privacy Practices set forth above.

138. Plaintiff and class members paid money to Henry Ford Health receive healthcare services. Plaintiff and class members reasonably believed and expected that Henry Ford Health would use part of those funds to obtain adequate data security. Henry Ford Health failed to do so.

139. Plaintiff and class members would not have provided their PII and PHI to Henry Ford Health had they known that Henry Ford Health would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach.

140. Plaintiff and class members fully performed their obligations under their implied contracts with Henry Ford Health.

141. Henry Ford Health breached its implied contracts with Plaintiff and class members by failing to safeguard Plaintiff's and class members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach.

142. The losses and damages Plaintiff sustained, include, but are not limited to:

    a. Theft of their PII and PHI;

    b. Costs associated with purchasing credit monitoring and identity theft protection services;

c. Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d. Lowered credit scores resulting from credit inquiries following fraudulent activities;

e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling, and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f. The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

g. Damages to and diminution in value of their Private Information entrusted, directly or indirectly, to Henry Ford Health with the mutual understanding that Henry Ford Health would safeguard Plaintiff's and class members' data against theft and not allow access and misuse of their data by others;

h.   Continued risk of exposure to hackers and thieves of their Private

Information, which remains in Henry Ford Health's possession and is

subject to further breaches so long as Henry Ford Health fails to

undertake appropriate and adequate measures to protect Plaintiff's and

class members' data; and

i.   Emotional distress from the unauthorized disclosure of Private

Information to strangers who likely have nefarious intentions and now

have prime opportunities to commit identity theft, fraud, and other

types of attacks on Plaintiff and class members.

143.   As a direct and proximate result of Henry Ford Health's breach of

contract, Plaintiff and class members are entitled to damages, including

compensatory, punitive, and/or nominal damages, in an amount to be proven at

trial.

**COUNT V**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT.**
**Mich. Comp. Laws Ann. § 445.901 et seq.**
**(on behalf of Plaintiff and the Michigan Subclass)**

144.   Plaintiff re-alleges and incorporates by reference herein all the

allegations contained in the preceding paragraphs.

145.   Plaintiff and the Michigan Subclass are "persons" as defined by Mich.

Comp. Laws Ann. § 445.903(d).

146.   Henry Ford Health advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

147.   Henry Ford Health engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

a.   Representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c);

b.   Representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e);

c.   Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and

d.   Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

148.   Henry Ford Health's unfair, unconscionable, and deceptive practices include:

a.   Failing to implement and maintain reasonable security and privacy measures to protect the PII and PHI of Plaintiff and the Michigan Subclass, which was a direct and proximate cause of the Data Breach;

b.   Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of the PII and PHI of Plaintiff and the Michigan Subclass, including duties imposed by HIPAA and the FTC Act, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that it would protect the privacy and confidentiality of the PII and PHI of Plaintiff and the Michigan Subclass, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of the PII and PHI of Plaintiff and the Michigan Subclass, including duties imposed by HIPAA and the FTC Act;

47

      f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure the PII and PHI of Plaintiff and the Michigan Subclass; and

      g.   Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of the PII and PHI of Plaintiff and the Michigan Subclass, including duties imposed by HIPAA and the FTC Act.

149. Henry Ford Health's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of patients' PII and PHI.

150. Henry Ford Health intended to mislead Plaintiff and the Michigan Subclass and induce them to rely on its misrepresentations and omissions.

151. Henry Ford Health acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded the rights of Plaintiff and the Michigan Subclass.

152. As a direct and proximate result of Henry Ford Health's unfair, unconscionable, and deceptive practices, Plaintiff and the Michigan Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with Henry Ford Health as they would not have paid Henry Ford

Health for goods and services or would have paid less for such goods and services but for Henry Ford Health's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII and PHI; and an increased, imminent risk of fraud and identity theft.

153.   Plaintiff and the Michigan Subclass seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, restitution, injunctive relief, and any other relief that is just and proper.

## COUNT VI
## UNJUST ENRICHMENT
### (on behalf of Plaintiff and the National Class)

154.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

155.   Plaintiff and Class Members have an interest, both equitable and legal, in their PHI and PII that was conferred upon, collected by, and maintained by Henry Ford Health and that was stolen in the Data Breach.

156.   Henry Ford Health benefitted from the conferral upon it of Plaintiff's and Class Members' PII and PHI, and by its ability to retain and use that information. Henry Ford Health understood that it so benefitted.

157.   Henry Ford Health also understood and appreciated that Plaintiff's and Class Members' PHI and PII was private and confidential and that its value depended upon Henry Ford Health maintaining its privacy and confidentiality.

158.   But for Henry Ford Health's willingness and commitment to maintain its privacy and confidentiality, that PHI and PII would not have been transferred to and entrusted with Henry Ford Health. Further, if Henry Ford Health had disclosed that its data security measures were inadequate, Henry Ford Health would not have been permitted to continue in operation by regulators and the healthcare marketplace.

159.   As a result of Henry Ford Health's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiff's and Class Members' PHI without having adequate data security measures, and its other conduct facilitating the theft of that PHI and PII), Henry Ford Health has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

160.   Henry Ford Health's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive PHI and PII, while

at the same time failing to maintain that information secure from intrusion and theft by hackers.

161.   Under the common law doctrine of unjust enrichment, it is inequitable for Henry Ford Health to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' PHI and PII in an unfair and unconscionable manner. Henry Ford Health's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

162.   The benefit conferred upon, received, and enjoyed by Henry Ford Health was not conferred officiously or gratuitously, and it would be inequitable and unjust for Henry Ford Health to retain the benefit.

## COUNT VII
## INJUNCTIVE/DECLARATORY RELIEF
### (on behalf of Plaintiff and the National Class)

163.   Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

164.   Henry Ford Health owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII and PHI.

165.   Henry Ford Health still stores Plaintiff's and Class Members' PII and PHI.

166. Since the Data Breach, Henry Ford Health has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

167. Henry Ford Health has not satisfied its legal duties to Plaintiff and Class Members.

168. Actual harm has arisen in the wake of the Data Breach regarding Henry Ford Health's duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Henry Ford Health's failure to address the security failings that led to that exposure.

169. Plaintiff, therefore, seeks a declaration: (a) that Henry Ford Health's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Henry Ford Health must implement and maintain reasonable security measures, including, but not limited to, the following:

    a. ordering that Henry Ford Health engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Henry Ford

Health's systems on a periodic basis, and ordering Henry Ford Health to promptly correct any problems or issues detected by such third-party security auditors;

b. ordering that Henry Ford Health engage third-party security auditors and internal personnel to run automated security monitoring;

c. ordering that Henry Ford Health audit, test, and train its security personnel regarding any new or modified procedures;

d. ordering that Henry Ford Health segment patient data by, among other things, creating firewalls and access controls so that if one area of Henry Ford Health's system is compromised, hackers cannot gain access to other portions of Henry Ford Health's systems;

e. ordering that Henry Ford Health purge, delete, and destroy in a reasonably secure manner patient data not necessary for its provision of services;

f. ordering that Henry Ford Health conduct regular computer system scanning and security checks;

g. ordering that Henry Ford Health routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h. ordering Henry Ford Health to meaningfully educate its current,

former, and prospective patients about the threats they face because of

the loss of their PHI to third parties, as well as the steps they must

take to protect themselves.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly

situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing

Plaintiff and her counsel to represent the Class;

b. for equitable relief enjoining Henry Ford Health from engaging in the

wrongful conduct complained of herein pertaining to the misuse and/or

disclosure of Plaintiff's and Class Members' PII and PHI, and from

refusing to issue prompt, complete, and accurate disclosures to Plaintiff

and Class Members;

c. for equitable relief compelling Henry Ford Health to use appropriate

cyber security methods and policies with respect to PII and PHI

collection, storage, and protection, and to disclose with specificity to

Class Members the types of PII and PHI compromised;

d.  for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e.  for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.  for prejudgment interest on all amounts awarded; and

g.  such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: July 19, 2023                     Respectfully submitted,

**FINK BRESSACK PLLC**

 */s/ David H. Fink*
David H. Fink (P28235)
Nathan J. Fink (P75185)
38500 Woodward Avenue, Suite 350
Bloomfield Hills, Michigan 48304
(248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

**BAILEY GLASSER LLP**
Bart D. Cohen*
1622 Locust Street
Philadelphia, PA  19103
(215) 274-9420
bcohen@baileyglasser.com

**THE CONSUMER PROTECTION FIRM, PLLC**
William "Billy" Peerce Howard*
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602
(813) 500-1500
Billy@TheConsumerProtectionFirm.com

*admission application forthcoming

*Attorneys for Plaintiff and the Proposed Class*