## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE HENRY FORD HEALTH
SYSTEM DATA SECURITY
LITIGATION

Case No: 2:23-cv-11736-GAD-KGA

Hon. Gershwin A. Drain

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Briana Tabbs, Latricia Pelt, Brandi McKenzie, and David King (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, move this Court, pursuant to Federal Rule of Civil Procedure 23, for an Order granting preliminary approval of the proposed class action Settlement Agreement agreed to by the Parties.[1] This Motion seeks preliminary approval of Plaintiffs' agreement with Henry Ford Health System ("Defendant" or "Henry Ford") to settle all individual and class claims that were made, or that could have been made, in Plaintiffs' Consolidated Amended Class Action Complaint. ECF No. 11.

In support of this Motion, Plaintiffs rely upon the accompanying Brief in Support, the Declaration of E. Powell Miller of The Miller Law Firm, P.C. (presently, Interim Lead Counsel, and Proposed Settlement Class Counsel here), which includes the contents of the Settlement Agreement and its supporting documentation, and the Declaration of RG/2 Claims Administration LLC, all in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

Plaintiffs respectfully request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the Settlement Class under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) in connection with

---

[1] The Settlement Agreement and its exhibits are included in the accompanying Brief in Support as an exhibit to the Declaration of E. Powell Miller in Support of the Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

the settlement process; (3) provisionally appoint Plaintiffs as representatives of the Settlement Class; (4) provisionally appoint The Miller Law Firm, P.C. as Settlement Class Counsel; (5) find that the proposed Settlement is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class by a settlement administrator; (6) appoint RG/2 Claims Administration LLC as Settlement Administrator; (7) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice; (8) establish dates for a hearing on final approval of the proposed Settlement, Plaintiffs' service awards and Plaintiffs' Counsel's request for attorneys' fees and expenses; and (9) establish a deadline for the filing of objections by Settlement Class Members and for them to exclude themselves from the proposed Settlement Class with respect to the settlement.[2]

Pursuant to Local Rule 7.1(a)(1), on June 14, 2024, Plaintiffs' Counsel requested concurrence in the filing of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement from Defendant Henry Ford. Counsel for Henry Ford advised counsel for Plaintiffs that Henry Ford does not oppose the relief requested in the filing of the above Motion.

---

[2] A Proposed Order to this effect is included as an exhibit to Plaintiffs' accompanying Supporting Brief.

Dated: June 20, 2024        Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

*Interim Lead Counsel for Plaintiffs and
the Proposed Class*

Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

Bart D. Cohen
**BAILEY GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

Jeff Ostrow
Kristen Lake Cardoso
Steven Sukert

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
cardoso@kolawyers.com
sukert@kolawyers.com

William "Billy" Peerce Howard*
**THE CONSUMER PROTECTION FIRM, PLLC**
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602
(813) 500-1500
Billy@TheConsumerProtectionFirm.com

Nick Suciu III (P72052)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and the Proposed Class*

*admission forthcoming

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE HENRY FORD HEALTH SYSTEM DATA SECURITY LITIGATION | Case No: 2:23-cv-11736-GAD-KGA |
|  | Hon. Gershwin A. Drain |
|  | **CLASS ACTION** |
|  | **JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.   Does the proposed Settlement Class meet Rule 23's requirements for class certification for settlement purposes under Fed. R. Civ. P 23(b)(2) and (b)(3)?

**Plaintiffs' Answer: Yes.**

2.   Should the Court provisionally appoint The Miller Law Firm, P.C. as Settlement Class Counsel?

**Plaintiffs' Answer: Yes.**

3.   Should the Court provisionally appoint Plaintiffs as Class Representatives for the Settlement Class?

**Plaintiffs' Answer: Yes.**

4.   Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant the dissemination of notice to the proposed Settlement Class?

**Plaintiffs' Answer: Yes.**

5.   Should the Court appoint RG/2 Claims Administration LLC as Settlement Administrator?

**Plaintiffs' Answer: Yes.**

6.   Does the Notice Plan satisfy the requirements of Rule 23 and Due Process?

**Plaintiffs' Answer: Yes.**

**CONTROLLING AND MOST APPROPRIATE AUTHORITIES**

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

- *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF FACTS ..........................................................................4

III.  PROCEDURAL HISTORY..........................................................................5

IV.  THE SETTLEMENT TERMS ....................................................................6

V.   ARGUMENT...........................................................................................10

    A.  The Court Should Certify the Proposed Settlement Class......................10

       1.  Rule 23(a) Requirements Are Met for Settlement Purposes..............11

       2.  Rule 23(b) Requirements Are Met for Settlement Purposes...............14

    B.  The Court Should Appoint Proposed Settlement Class Counsel ............17

    C.  The Proposed Settlement Is Fundamentally Fair, Reasonable, and
       Adequate and Thus Warrants Preliminary Approval .............................17

       1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval.19

       2.  The Sixth Circuit's UAW Factors Support Preliminary Approval......19

    D.  The Proposed Notice Plan Is the Best Practicable .................................24

VI.  CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997).......................................................................... passim
*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ......................................................... 12, 14
*Bert v. AK Steel Corp.*,
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ...................................19
*Bittinger v. Tecumseh Prods. Co.*,
   123 F.3d 877 (6th Cir. 1997) ...........................................................12
*Breneman v. Keystone Health*,
   No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023)...................................3
*Calloway v. Caraco Pharm. Labs., Ltd.*,
   287 F.R.D. 402 (E.D. Mich. 2012) ...................................................15
*Curry v. SBC Commc'ns, Inc.*,
   250 F.R.D 301 (E.D. Mich. 2008) .....................................................11
*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
   604 F. Supp. 446 (E.D. Pa. 1985).....................................................24
*Fox v. Iowa Health Sys.*, 2
   021 WL 826741 (W.D. Wis. Mar. 4, 2021).......................................23
*Garner Properties & Mgmt. v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020) ........................................ 9, 10, 13
*Garner Properties & Mgmt. v. City of Inkster*,
   2020 WL 4726938 (E.D. Mich. Aug. 14, 2020)....................................9
*Hammond v. The Bank of N.Y. Mellon Corp.*,
   2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ...................22
*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) ...................................................24
*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ...................................................20
*In re Fed. Skywalk Cases*,
   97 F.R.D. 380 (W.D. Mo. 1983)........................................................24
*In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013)............................................................23
*In re Packaged Ice Antitrust Litig.*,
   2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)....................................17
*In re Target Customer Data Sec. Breach Litig.*,
   No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ....................................23

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
  266 F. Supp. 3d 1 (D.D.C. 2017) ..........................................................................22
*In re Wawa, Inc. Data Sec. Litig.*,
  2021 WL 3276148 (E.D. Pa. July 30, 2021) ........................................................21
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ........................................................................ 11, 15
*In re Wright & Filippis Data Security Breach Litig.*,
  No. 22-cv-12908 (E.D. Mich. Jan. 4, 2024) ..........................................................3
*Kinder v. Nw. Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011) .....................................................................11
*Kritzer v. Safelite Solutions, LLC*,
  2012 WL 1945144 (S.D. Ohio May 30, 2012) .............................................. 21, 22
*Machesney v. Lar-Bev of Howell, Inc.*,
  317 F.R.D. 47 (E.D. Mich. 2016) ........................................................................15
*Merenda v. VHS of Michigan, Inc.*,
  296 F.R.D. 528 (E.D. Mich. 2013) ......................................................................14
*Moeller v. Wk. Publications, Inc.*,
  649 F. Supp. 3d 530 (E.D. Mich. 2023) ...............................................................10
*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
  501 F.3d 592 (6th Cir. 2007) ...............................................................................15
*Sprague v. General Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ...............................................................................12
*Strano v. Kiplinger Washington Eds., Inc.*,
  649 F. Supp. 3d 546 (E.D. Mich. Jan. 6, 2023) .....................................................9
*Thacker v. Chesapeake Appalachia, L.L.C.*,
  259 F.R.D. 262 (E.D. Ky. 2009) .................................................................. 17, 19
*Thomsen v. Morley Companies, Inc.*,
  639 F. Supp. 3d 758 (E.D. Mich. 2022) .................................................................9
*Thomsen v. Morley Companies, Inc.*,
  2023 WL 3437802 (E.D. Mich. May 12, 2023) ......................................................9
*Trombley v. Nat'l City Bank*,
  759 F. Supp. 2d 20 (D.D.C. 2011) .......................................................................22
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007) .................................................................. 13, 18, 22
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .........................................................................................12

## Other Authorities

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)........................................17

*Newberg on Class Actions* § 11.41 (4th ed. 2002) ......................................... 17, 25

## Rules

Fed. R. Civ. P. 23(a)..............................................................................11

Fed. R. Civ. P. 23(a)(1)..........................................................................11

Fed. R. Civ. P. 23(a)(2)..........................................................................12

Fed. R. Civ. P. 23(a)(3)..........................................................................12

Fed. R. Civ. P. 23(a)(4)..........................................................................13

Fed. R. Civ. P. 23(b)..............................................................................14

Fed. R. Civ. P. 23(b)(3)........................................................... 11, 14, 15, 16

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................8, 24

Fed. R. Civ. P. 23(e)(1)..........................................................................25

Fed. R. Civ. P. 23(e)(2)..........................................................................18

Fed. R. Civ. P. 23(g)(1)(A)(i-iv)................................................................16

Fed. R. Civ. P. 23(g)(1)(B) ......................................................................16

## I.     INTRODUCTION

This case arises from a data security incident[1] (the "Data Security Incident") experienced by Defendant Henry Ford Health System ("Henry Ford") on or about March 30, 2023 involving the potential unauthorized access of Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (together, "Private Information") of certain individuals. *See* **Exhibit A**, Declaration of The Miller Law Firm, P.C. in support of Plaintiffs' Motion ("Miller Decl."), ¶ 5. Henry Ford's forensic investigation determined that certain email accounts were compromised, and, as a result, the PHI of roughly 168,000 persons may have been accessed, including one's name, gender, date of birth, age, lab results, procedure type, diagnosis, date of service, telephone number, medical record number and/or internal tracking number. *See* Consolidated Amended Complaint ("CAC"), ¶ 1.

Following Henry Ford's disclosure of the Data Security Incident, four putative class actions were filed against Henry Ford and then later consolidated into this Action.[2] Plaintiffs' Counsel filed the operative CAC on October 13, 2023. ECF No. 11. On November 14, 2023, the Court granted an order extending Defendant's time to answer, which gave the Parties time to "engage in the exploration of the potential

---

[1] Settlement terms have the same definition as set forth in the Settlement Agreement.
[2] *Pelt v. Henry Ford Health System*, No. 2:23-cv-11736; *Tabbs v. Henry Ford Health System*, No. 2:23-cv-11758; *McKenzie v. Henry Ford Health System*, No. 2:23-cv-11796; *King v. Henry Ford Health System*, No. 4:23-cv-11993.

early resolution of this matter." *Id.* On January 23, 2024, the Parties filed a joint request to extend Defendant's deadline to answer, given that the Parties had agreed to engage in mediation and explore early resolution. ECF No. 13.

On February 8, 2024, the Parties participated in a mediation with a neutral, Bennett G. Picker of Stradley Ronon. Miller Decl., ¶ 8. The mediation assisted the Parties in resolving their outstanding differences, and led to an agreement in principle to settle this matter on or around March 18, 2024. *Id.* at 9. The Parties then worked to finalize the terms of a Settlement Agreement ("S.A."). *Id.* The negotiated S.A. provides for a $700,000 non-revisionary Settlement Fund for the exclusive source of payment to the Settlement Class ("Class"), for Administrative Expenses, Notice, Costs, and any Service and Fee Awards. Miller Decl., ¶ 13; S.A. § 3.1.

Settlement Class Members benefit from the S.A. in many ways, as those who file a claim will be entitled to credit monitoring and insurance services ("CMIS") and may submit a claim for one of the following: a Documented Loss Payment, up to $2,500 (*see* S.A. § 3.2(a)); or a pro rata Cash Fund Payment (*id.* § 3.2(b)). The Cash Fund Payment will be calculated after payment of all class benefits, settlement administration fees, attorneys' fees and costs, and service awards have been deducted. *See* S.A. § 3.7. The Settlement Fund is non-revisionary—no funds will revert back to Henry Ford. The S.A. includes an agreement that Henry Ford will

adopt, continue, and/or implement various data and information security measures designed to improve its data security practices. S.A. § 2.1.

The results achieved by the S.A. are at least adequate, given the litigation risks faced by Plaintiffs, and compare favorably with those achieved in other similar cases.[3] Thus, Plaintiffs respectfully move this Court to: (1) grant preliminary approval of the S.A.; (2) provisionally certify the Settlement Class under Rules 23(b)(2) and 23(b)(3) in relation to the settlement process; (3) provisionally appoint Plaintiffs as representatives of the Settlement Class; (4) provisionally appoint The Miller Law Firm, P.C. as Settlement Class Counsel; (5) find that the proposed S.A. is sufficiently fair, reasonable, and adequate to allow dissemination of notice of the settlement to the proposed Settlement Class by a settlement administrator; (6) appoint RG/2 Claims Administration LLC as Settlement Administrator; (7) approve the Notice Plan described in the S.A. and its Exhibits, including directing distribution of the Proposed Notice; (8) establish dates for a hearing on final approval of the proposed S.A. and Plaintiffs' request for service awards and attorneys' fees and expenses; and (9) establish a deadline for filing of objections and requests for exclusion.

---

[3] The S.A. produces a per class member recovery of roughly $4.16. *Cf., e.g.*, *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Apr. 11, 2023) (preliminarily approving award of $3.83 for 235,237 class members); *In re Wright & Filippis Data Security Breach Litig.*, No. 22-cv-12908 (E.D. Mich. Jan. 4, 2024), (approval of roughly $3.30 each for 877,584 class members).

## II.   STATEMENT OF FACTS

Henry Ford is one of the largest health systems in Michigan that serves patients across 250 locations throughout the state. Plaintiffs allege that on or about March 30, 2023, Henry Ford observed that its computer network and the sensitive Private Information of Plaintiffs and the Class had been subject to a phishing attack on March 30, 2023, which compromised the Private Information of patients, including Plaintiffs and Class Members ("Data Security Incident"). The Data Security Incident involved roughly 168,000 individuals, including Henry Ford patients, and the allegedly compromised information included Class Members' sensitive Private Information including, but not limited to: names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers.

Plaintiffs allege that their Private Information was compromised due to Henry Ford's negligent acts and omissions and failure to protect this sensitive data of all Class Members. They also contend that Henry Ford unreasonably delayed notifying them after becoming aware of the breach. Henry Ford denies these allegations.

Plaintiffs allege that they and the Class have suffered injury as a result of Henry Ford's conduct, including, e.g., theft of their Private Information; imminent injury from fraud; risks of having compromised PHI; damages flowing from delayed notification; loss of privacy; out-of-pocket expenses and time-value reasonably

expended to mitigate the effects of the Data Security Incident; improper access to their credit score, accounts, and/or funds; and increased costs related to reduced credit score, including costs of borrowing and insurance. *See, e.g.*, CAC, ¶ 24, 298.

## III.   PROCEDURAL HISTORY

Between July 19, 2023 and August 9, 2023, four putative class actions were filed in this District against Henry Ford arising out of the Data Security Incident. On August 11, 2023, the Plaintiffs in these cases filed a motion to consolidate the action under this case number. ECF No. 6. On September 13, 2023, the Court granted this relief. ECF No. 8. On October 13, 2023, Plaintiffs filed the CAC. ECF No. 11.

On January 23, 2024, the Court entered the Parties' stipulated order to extend Henry Ford's time to respond to the CAC while the Parties explored early resolution. ECF No. 13. On April 14, 2024, the Court entered the Parties' requested stay of the proceedings pending the filing of preliminary approval. ECF No. 24.

Prior to the mediation, Plaintiffs served Henry Ford with extensive written questions seeking information relevant to the Data Security Incident. Miller Decl., ¶ 10. On February 8, 2024, the Parties participated in a day-long mediation with Bennett Picker. *Id.* ¶ 8. The parties were unable to reach a resolution. However, the parties continued to engage in settlement negotiations and eventually reached a settlement in principle on March 18, 2024. *Id.* ¶ 9. The Parties have since negotiated the details of the S.A. and its exhibits, executing the S.A. on June 14, 2024. *Id.*

## IV.   THE SETTLEMENT TERMS

***Proposed Settlement Class.*** The S.A. will provide substantial relief for the following Settlement Class: "all natural persons residing in the United States who were mailed written notification by Henry Ford that their Personal Information was potentially accessed, viewed, and/or obtained as a result of the Data Security Incident which occurred on or about March 30, 2023." S.A. § 1.43 (exclusions, *id.*). The Settlement Class contains roughly 168,000 individuals. S.A. at p.1 (Recitals).

***The Settlement Fund.*** Henry Ford has agreed to create a non-reversionary Settlement Fund in the amount of $700,000 which will be used to make payments to the Settlement Class, to pay the costs of Administration, Costs, and for any Service and Fee Awards. S.A. § 3.1. Settlement Class Members may submit a claim for either a *Documented Loss Payment* (up to $2,500, with proper supporting documentation, S.A. § 3.2(a)); or (2) *Cash Fund Payment*: (a pro rata cash payment, S.A. § 3.2(b)). Any residual funds after payment of Settlement Class benefits, administrative and other costs, and any Service and Fee Awards, shall be paid pro rata to all Settlement Class Members who elected a Cash Fund Payment. *See* S.A. § 3.7.

***Remedial Measures and Security Enhancements.*** Henry Ford has agreed to adopt, continue, and/or implement various data and information security measures to enhance its data security which will benefit the Settlement Class whose Private Information remains in Henry Ford's possession. S.A. § 2.1.

***Class Notice and Settlement Administration.*** The Parties have selected RG/2 as Administrator through a competitive bidding process. RG/2 is experienced in administering data security class claims. S.A. § 1.41; **Exhibit B**, Declaration of Melissa E. Baldwin of RG/2 Claims Administration LLC ("RG/2 Decl."), ¶ 2.

Within fourteen (14) days after the issuance of the Preliminary Approval Order, Henry Ford will provide RG/2 with a list of any and all names and addresses of Class Members that it has in its possession, custody, or control. S.A. § 6.4. Notice will begin within thirty-five (35) days after entry of a Preliminary Approval Order. S.A. § 1.28. Using the class list provided by Henry Ford, RG/2 will mail the Summary Notice ("Notice") via USPS mail. RG/2 Decl., ¶ 10. The Notice will be mailed to all Settlement Class Members, and, if returned, any undeliverable mail will be sorted and scanned. *Id.* ¶ 11. For returned notices without a forwarding address, RG/2 will use Accurint (a division of Lexis-Nexis) to perform a basic "skip trace" search in order to retrieve the most accurate and updated information. *Id.* The database will be updated with any new address found and the Notice will be re-mailed to the updated address. *Id.*

The Administrator also will establish and maintain a Settlement Website ("Website") that will host a traditional "Long Form" notice. S.A. § 6.7; RG/2 Decl., ¶ 8. The Notices will refer Settlement Class Members to the Website at which they will be able to learn about the S.A. and their rights in relation to it. S.A. § 6.7. The

Website shall contain information regarding Claim Form submission (i.e., through the Website) and downloadable documents, including the Long Form Notice, Claim Form, the S.A., the Preliminary Approval Order upon entry by the Court, the motion for Service and Fee Awards, the motion for Final Approval and Order and Judgment, and the CAC, and will notify the Settlement Class of the date, time, and place of the Final Approval Hearing. S.A. §§ 6.7, 7.1, 9.2. The Website shall also provide the number and address to contact the Administrator directly. S.A. § 6.7.

The Notices will be clear and concise and directly apprise Settlement Class Members of claim, objection, and opt-out information. Fed. R. Civ. P. 23(c)(2)(B). The Administrator shall provide 90 days following the Notice Date for submission of Claim Forms. S.A. § 3.4. To the extent any submitted claims are incomplete or deficient, Settlement Class Members shall have 30 days to cure. S.A. § 3.5. And within 90 days after: (i) the Effective Date (the date on which all required conditions of the S.A. are satisfied prior to disbursement, *see* S.A. § 10.1); or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Administrator shall cause funds to be distributed to each Settlement Class Member who is entitled to funds based on the selection made on their given Claim Form. S.A. § 3.6.

*Attorneys' Fees and Expenses.* Plaintiffs will also separately seek an award of attorneys' fees not to exceed one-third (1/3) of the Settlement Fund (i.e.,

$233,333.33), and reimbursement of reasonable costs and litigation expenses, which shall be paid from the Settlement Fund. S.A. § 9.1. Proposed Settlement Class Counsel's fee request is reasonable for settlements of this nature and size. *See, e.g.*, *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758, 768 (E.D. Mich. 2022) (data security case resolved through mediation, 33% fee request preliminarily approved and found to be "adequate"); *Garner Properties & Mgmt. v. City of Inkster*, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (fee request for 1/3 of settlement fund found to be reasonable). Plaintiffs' attorneys' fees motion will be filed in advance of the objection deadline and uploaded to the Website after filing.

**Service Awards to Named Plaintiffs.** The Plaintiffs here support the S.A., have been personally involved, and have been vital in this case. Miller Decl., ¶ 24. Plaintiffs assisted Counsel with their investigation, sat through multiple interviews, and provided supporting documentation and personal information. *Id.* Plaintiffs will separately petition for awards of $1,500 each, recognizing their time, effort, and expense incurred pursuing claims that benefited the Settlement Class. S.A. § 8.1.

The amount requested here is reasonable and common in settled class actions. *See, e.g.*, *Morley*, 2023 WL 3437802, at *3 (E.D. Mich. May 12, 2023) (granting final approval of service awards of $1,500 in similarly situated data security case); *Garner*, 2020 WL 4726938 at *12 (approving $1,000 service award); *Strano v.*

*Kiplinger Washington Eds., Inc.*, 649 F. Supp. 3d 546, 561 (E.D. Mich. Jan. 6, 2023)

(preliminarily approving $1,000 service award).

**_Release and Dismissal With Prejudice._** Plaintiffs and the Settlement Class,

upon entry of Final Approval Order, will be deemed to have released all claims

against Henry Ford related to the Data Security Incident. S.A. § 4.1; *Id.* § 1.36. The

parties at that time will request that the Court dismiss the action with prejudice.

## V.    ARGUMENT

"The question at the preliminary-approval stage is 'simply whether the

settlement is fair enough' to begin the class-notice process." *Moeller v. Wk.*

*Publications, Inc.*, 649 F. Supp. 3d 530, 537 (E.D. Mich. 2023) (citing *Garner*, 333

F.R.D. 614, 626 (E.D. Mich. 2020)). And a settlement agreement itself should be

preliminarily approved if it "does not disclose grounds to doubt its fairness or other

obvious deficiencies, such as unduly preferential treatment to class representatives

or of segments of the class, or excessive compensation for attorneys" and "appears

to fall within the range of possible approval." *Garner*, 333 F.R.D. at 621.[4] And "it

is clear the bar is lower for preliminary approval than it is for final approval." *Id.*

### A.    The Court Should Certify the Proposed Settlement Class

Before granting preliminary approval of a proposed settlement, a Court must

determine that the proposed settlement class is appropriate for certification. *Amchem*

---

[4] Unless otherwise noted, all citations and internal quotations are omitted.

*Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements. Fed. R. Civ. P. 23(a). Because certification is sought under Rule 23(b)(3), Plaintiffs must demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615-16. District courts have broad discretion to determine whether certification is appropriate. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained *infra*, the Settlement Class satisfies Rule 23(a) and 23(b)(3) and should be certified.

### 1. Rule 23(a) Requirements Are Met for Settlement Purposes

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "In most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008). The Settlement Class includes roughly 168,000 individuals identified by Henry Ford, thus satisfying the numerosity requirement for purposes of settlement. The Class is thus also ascertainable. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) (class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member").

***Commonality.*** Rule 23(a)(2) is satisfied when questions of law or fact are common to the class, the resolution of which will bring a class-wide resolution. Fed. R. Civ. P. 23(a)(2). It may be shown when the claims all "depend upon a common contention," with a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Here, Plaintiffs' claims turn on the adequacy of Henry Ford's data security in protecting Settlement Class Members' Private Information. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, for purposes of settlement, for all Settlement Class Members at once.

***Typicality.*** A class representative's claims must be typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality assesses "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The claims need not be identical; rather,

12

they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). The "court must inquire whether the interests of the named plaintiff are aligned with those of the represented group, such that in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623. Plaintiffs allege that each Settlement Class Member had their Private Information compromised as a result of the Data Security Incident, and were impacted by the same allegedly inadequate data security that allegedly harmed the Class. Thus, Plaintiffs' pursuit of their own claims necessarily advances the interests of the Settlement Class, satisfying typicality.

**Adequacy.** Class representatives must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007). The proposed Representatives have no conflict, have participated actively, and are represented by attorneys experienced in class actions, including data security cases. *See* Miller Decl., ¶¶ 24, 29, 30. Plaintiffs' Counsel regularly engage in data privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data security and other class actions. *Id.* ¶¶ 29, 30.

Plaintiffs' Counsel have devoted substantial resources to this action: including investigating Plaintiffs' claims; obtaining and analyzing Plaintiffs' detailed personal records; analyzing the scope of the data security incident and Defendant's privacy policies, remedial steps, and financial condition; participating in mediation; and, negotiating a S.A. that provides meaningful relief for the Class, despite substantial litigation risks. *Id.* ¶ 25. Plaintiffs' Counsel have vigorously prosecuted this case and will work diligently on behalf of the Class throughout the administration process.

### 2. Rule 23(b) Requirements Are Met for Settlement Purposes

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for a court to certify a class. Fed. R. Civ. P. 23(b); *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013).

Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. This requirement considers "the difficulties likely to be encountered in the management of a class action" and issues with individual litigation. *Id.*; *see also Amchem*, 521 U.S. at 617 ("[t]he policy

14

at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action[.]"). The proposed Settlement Class satisfies the above.

 ***Common Questions of Law and Fact Predominate.*** Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* Rule 23(b)(3) "require[s] that common issues predominate over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). Predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Data security cases present questions of law and fact central to liability and predominate over any individual issue. Henry Ford's alleged course of conduct was uniform across the Class, so the claims "will prevail or fail in unison." *Whirlpool*, 722 F.3d at 859. Class-wide determination of this will be the same, so predominance is satisfied.

 ***A Class Action Is the Superior Method of Adjudication.*** Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407-08 (E.D. Mich. 2012). Such is

especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute per person is too small given the complexity, including costs for document review, technical issues, and experts. Individual damages are insufficient to allow such actions—at least not with the aid of adequate counsel. Such prosecution would delay resolution, and may lead to inconsistent rulings.[5] Thus, the Court should certify the Class pursuant to Rule 23(b)(3). Henry Ford does not oppose class certification for settlement purposes.

### B.    The Court Should Appoint Proposed Settlement Class Counsel

The next step when deciding whether to preliminarily approve a settlement is to appoint class counsel; "a court that certifies a class must appoint class counsel" who "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Courts generally consider the following: (1) proposed class counsel's work in investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

---

[5] The Court need not consider trial manageability. *Amchem*, 521 U.S. at 620 ("with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Proposed Settlement Class Counsel has extensive experience prosecuting data security and other complex cases, and dedicated substantial resources to this case, including negotiating this Settlement. Miller Decl., ¶¶ 25, 29, 30. The Court should thus provisionally appoint The Miller Law Firm, P.C. as Settlement Class Counsel.

## C. The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate and Thus Warrants Preliminary Approval

Settlement of class actions is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). A court makes an initial fairness evaluation of this settlement based on written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). The Court must "ensur[e] that the proposed settlement is not illegal or collusive" based upon the "issues and evidence" and "the arms-length nature of the negotiations prior to the proposed settlement." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009).

Rule 23(e)(2) provides factors for the Court to consider to determine if a settlement is "fair, reasonable, and adequate," examining whether: (A) class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the class relief is adequate, reviewing:

17

(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing class relief, including the processing of class-member claims; (iii) the terms of any proposed attorney's fee, including timing; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitable to each other. Fed. R. Civ. P. 23(e)(2). The Sixth Circuit provides its own factors to consider: (1) risk of fraud or collusion; (2) complexity, expense and likely duration of the litigation; (3) amount of discovery engaged in by the parties; (4) likelihood of success on the merits; (5) opinions of class counsel and class representatives; (6) reaction of absent class members; and (7) public interest. *UAW*, 497 F.3d at 631. The S.A. meets each consideration.

### 1.  The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

<u>First</u>, Plaintiffs and Plaintiffs' Counsel have adequately represented the Class, securing a per-class member recovery of roughly $4.16 for the 168,000 Settlement Class Members. This is on par with comparable data security settlements. *See, e.g.*, *Wright & Filippis* (roughly $3.30 each for 877,584 person class); *Keystone* (roughly $3.83 each for 235,237 person class). Moreover, in this case, it appears that Social Security numbers were not compromised. Miller Decl., ¶ 23.

<u>Second</u>, the S.A. was negotiated at arm's-length through the use of a neutral mediator, Bennet Picker, after exchanging information sufficient to assess the strengths and weaknesses of each Party's position. *See supra*.

<u>Third</u>, the relief is adequate. Settlement Class Members may elect one of the following types of recovery: Documented Loss or Cash Fund Payment, described *supra*. S.A. ¶¶ 3.2(a)-(b). And the structure of proposed Service Awards, attorneys' fees, and costs are consistent with that of other data security settlements. *See supra*.

<u>Fourth</u>, the S.A. treats Settlement Class Members equitably. Each Settlement Class Member may elect one of the two avenues of recovery (S.A. ¶¶ 3.2(a)-(b)), such as a *pro rata* payment identical those who make that choice. S.A. ¶ 3.2(c). This settlement structure has received preliminary and final approval in other data security cases. *See, e.g.*, *Keystone*, *Wright & Filippis*, *supra*.

<u>Finally</u>, the S.A. and its terms are available for review by all Class Members.

## 2. The Sixth Circuit's *UAW* Factors Support Preliminary Approval

<u>First</u>, the S.A. is the result of informed, non-collusive, arm's length negotiations between the Parties. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker*, 695 F.Supp.2d at 531. Negotiations overseen by a neutral mediator are given extra weight. *See Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"). This case was settled through the assistance of a respected mediator—Mr. Picker has substantial experience mediating complex class cases,

19

including data security cases, and his active involvement ensured that the negotiations proceeded at arm's length. And the mediation process allowed Plaintiffs' Counsel to confirm, among other information, the size of the Settlement Class. *See* S.A. (class of 168,000 persons).

<u>Second</u>, the complexity, expense and likely duration of the litigation favors S.A. approval. *See In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 497 (E.D. Mich. 2008) ("expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement"). "For class actions in particular, courts view settlement favorably because it avoids the costs, delays and multitudes of other problems associated." *Id.* Absent early resolution, this case has the capacity to persist for years. Pre-trial litigation would be extensive, with voluminous discovery needed from Henry Ford and third-parties used in an information technology capacity. Experts would be required to testify regarding Henry Ford's data security practices and industry standard practices. Fact-finding would be required into what Private Information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiffs would need to survive dispositive motions and prevail on a motion for class certification. Such motion practice and appeals could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could

take several years for the Class to see any real recovery, if any at all. Rather than pursuing protracted and uncertain litigation, Plaintiffs and their counsel negotiated the S.A., which provides immediate, certain, and meaningful relief. This factor weighs in favor of finding the S.A. to be fair, reasonable, and adequate.

Third, the Parties engaged in sufficient fact-finding, and Plaintiffs had enough information to "adequately assess their case and the desirability of the proposed settlement[.]"*Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012). Courts often "defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding." *Id.* Plaintiffs' Counsel made an informed decision regarding the appropriateness of settlement. Prior to mediation, Plaintiffs served and received informal discovery pertaining to: cyber-forensic reports, the number and type of persons affected, security measures taken post-Data Security Incident, internal investigations, the type of Private Information (no Social Security numbers here) that was potentially compromised, and the amount of insurance coverage. Miller Decl., ¶¶ 10, 23; *see also In re Wawa, Inc. Data Sec. Litig.*, 2021 WL 3276148, at *9 n.4 (E.D. Pa. July 30, 2021) ("the [parties] did not engage in 'formal' discovery, that is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important informal discovery"); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 26 (D.D.C.

2011) ("Although the Court will consider the timing of the settlement and the amount of discovery conducted at the final approval stage, the Court will not deny preliminary approval due to the absence of significant discovery.").

Plaintiffs' Counsel thoroughly evaluated damages and all relevant issues and obtained an excellent settlement for the Settlement Class. Miller Decl., ¶ 11; *see also UAW*, 2008 WL 2968408, at *26 (E.D. Mich. July 31, 2008) (use of informal discovery an adequate tool for class counsel to make informed decision). Combined with their experience, Plaintiffs' Counsel had the information needed to "adequately assess the[] case and the desirability of the proposed settlement." *See Kritzer*, 2012 WL 1945144, at *7. Plaintiffs' Counsel conducted sufficient fact-finding.

<u>Fourth</u>, weighed against the likelihood of success on the merits, the S.A. provides favorable relief. To "judge fairness" of a proposed settlement, courts "weigh the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *UAW*, 497 F.3d at 631. While Plaintiffs are confident, there is risk, as is true in all complex class actions. Data security cases face substantial hurdles in advancing past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Cases implicating data far more sensitive have been found lacking at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) (allegations found

insufficient to establish standing), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing). As another court recently observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex". *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021). Given this risk, settlement is the more prudent course when a reasonable one can be reached. Damages methodologies in such cases, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data security case, establishing causation on a class-wide basis is uncertain. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). The $700,000 Settlement Fund for the 168,000 Settlement Class Members ($4.16 each) provides ample compensation for individual and the aggregate class-wide claims, and exceeds that of other exemplary data security settlements. *See, e.g.*, *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ($0.17 each). This underscores the exemplary resolution here.

Fifth, Proposed Settlement Class Counsel and Class Representatives support approval. *See* Miller Decl., ¶ 23. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. This *UAW* factor, therefore, favors preliminary approval.

Sixth, reaction of absent Settlement Class Members is not yet known. The Settlement Class has not had the chance to voice support. Nonetheless, Plaintiffs and Plaintiffs' Counsel strongly support the S.A., which they believe is fair, reasonable, and adequate and in the Class's best interest. Miller Decl., ¶ 23; *see also In re Fed. Skywalk Cases*, 97 F.R.D. 380, 389 (W.D. Mo. 1983) ("While the Court cannot blindly accept the recommendation of class counsel, the Court is entitled to and does place considerable weight on their recommendations."); *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 552 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight."). This factor also favors approval.

Seventh, the S.A. is in the public interest. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously different and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The settlement of an action affecting roughly 168,000 persons surely does the above, ensuring uniformity. All of the *UAW* factors weigh in favor of approval.

## D. The Proposed Notice Plan Is The Best Practicable

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances" who "can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice

in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." NEWBERG, § 11:53 at 167. As shown by the proposed notices and RG/2's Declaration, the Notice Plan developed by both Parties through the S.A. satisfies the requisite criteria.

## VI.   CONCLUSION

Plaintiffs, on a provisional basis and subject to final approval, respectfully request the Court to: certify the class; appoint Plaintiffs as Class Representatives; appoint The Miller Law Firm, P.C. as Settlement Class Counsel; grant preliminary Settlement approval; approve and direct distribution of the Proposed Notice; establish deadlines for filing any objection or exclusion; and schedule a Final Fairness hearing.[6]

Dated: June 20, 2024

Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

*Interim Lead Counsel for Plaintiffs and
the Proposed Class*

---

[6] A proposed preliminary approval order is attached hereto as **Exhibit C**.

Jonathan Shub
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
T: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

Bart D. Cohen
**BAILEY GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

Jeff Ostrow
Kristen Lake Cardoso
Steven Sukert
**KOPELOWITZ OSTROW
FERGUSON WEISELBERG
GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
cardoso@kolawyers.com
sukert@kolawyers.com

William "Billy" Peerce Howard*
**THE CONSUMER PROTECTION
FIRM, PLLC**
401 East Jackson Street, Suite 2340
Truist Place
Tampa, FL 33602

26

(813) 500-1500
Billy@TheConsumerProtectionFirm.com

Nick Suciu III (P72052)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Road, Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
nsuciu@milberg.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: (866) 252-0878
gklinger@milberg.com

*Attorneys for Plaintiffs and
the Proposed Class*

*admission forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2024, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
