# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE HENRY FORD HEALTH SYSTEM DATA SECURITY LITIGATION | Case No.: 2:23-cv-11736-GAD-KGA<br><br>Hon. Gershwin A. Drain<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## DECLARATION OF E. POWELL MILLER OF THE MILLER LAW FIRM, P.C.  IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, E. Powell Miller of The Miller Law Firm P.C., declare as follows, pursuant to 28 U.S.C. § 1746:

1.     I am an attorney admitted to practice before this Court. I make the foregoing declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2.     My firm, The Miller Law Firm, P.C. is privileged to serve as the provisionally-appointed Settlement Class Counsel ("Proposed Class Counsel") on behalf of the Plaintiffs and the putative class ("Class") in this litigation. I am the founder and managing partner of The Miller Law Firm, P.C., and my firm regularly litigates class actions and data security cases in Michigan and throughout the United States. I submit this Declaration in support of Plaintiffs' Unopposed Motion for

1

Final Approval of Class Action Settlement. I have attached the executed Settlement Agreement (or, "S.A.") as **Exhibit 1** to this Declaration. I have attached my firm's resume and selected bios as **Exhibit 2** hereto.

3.       This case arises from a data security incident (the "Data Security Incident") experienced by Defendant Henry Ford Health System ("Henry Ford").

4.       Between July 19, 2023 and August 9, 2023, four putative class actions were filed in this District against Henry Ford arising out of the Data Security Incident.[1] After discussion among counsel for the Plaintiffs in these four class actions, on August 11, 2023, the Plaintiffs filed a motion to consolidate the cases under this case number. ECF No. 6. On September 13, 2023, the Court granted this relief. ECF No. 8. On October 13, 2023, Plaintiffs filed their Consolidated Amended Complaint ("CAC"). ECF No. 11.

5.       The Operative CAC alleges that on or about March 30, 2023, Henry Ford experienced the potential unauthorized access of Personally Identifiable Information ("PII") and Protected Health Information ("PHI") (together, "Private Information") of approximately 168,000 individuals. CAC, ¶¶ 1, 5, 8, 11.

6.       Throughout the course of the litigation here, and, as part of their

---

[1] *Pelt v. Henry Ford Health System*, No. 2:23-cv-11736, filed July 19, 2023; *Tabbs v. Henry Ford Health System*, No. 2:23-cv-11758, filed July 21, 2023; *McKenzie v. Henry Ford Health System*, No. 2:23-cv-11796, filed July 26, 2023; and *King v. Henry Ford Health System*, No. 4:23-cv-11993, filed August 9, 2023.

obligation under Fed. R. Civ. P. 26, the Parties discussed the possibility of exploring an early resolution via mediation.

7.    The Parties ultimately agreed to use Bennett G. Picker of Stradley Ronon as the mediator for this matter.

8.    On February 8, 2024, the Parties participated in a day-long mediation with Bennett Picker. The parties were unable to reach a resolution.

9.    However, the Parties continued to engage in settlement negotiations through a series of telephone calls and electronic correspondence and eventually reached a settlement in principle on March 18, 2024. The Parties have since negotiated the details of the Settlement Agreement and its exhibits, executing the Settlement Agreement on June 14, 2023. *See* Exhibit 1 hereto.

10.    Prior to attending mediation, Plaintiffs served Henry Ford with written questions seeking information relevant to the Data Security Incident and potential resolution. Additionally, the Parties engaged in pre-mediation discovery under Fed. R. Evid. 408, which included the following areas of inquiry: cyber-forensic reports, internal investigations, correspondence with government regulatory agencies, number of persons affected by the Data Security Incident, security measures taken post-Data Security Incident, the types of PII compromised during the Data Security Incident – including that no Social Security numbers were compromised here – and the amount of insurance coverage.

11.    Henry Ford produced the above information with sufficient time for Plaintiffs' Counsel to thoroughly evaluate and include it in their analysis of damages. Through informal discovery, Plaintiffs uncovered that the Data Security Incident potentially disclosed the personal information of approximately 168,000 individuals. Through informal discovery, the Parties were able to draft mediation briefs outlining each Party's respective position.

12.    To further assist in reaching a resolution among the Parties, Mr. Picker convened telephone calls with both sides prior to the mediation.

13.    The Settlement Agreement is an agreement to resolve all claims asserted in the Consolidated Amended Complaint. Henry Ford has agreed to provide a non-reversionary Settlement Fund of $700,000.00. The Settlement Fund will be distributed to Settlement Class Members pursuant to the distribution plan (S.A. § 3), from which the Settlement Administrator will provide benefit(s) to Settlement Class Members (less any amounts used to pay for Administrative Expenses, including Notice, Costs, and any Service and Fee Awards).

14.    Settlement Class Members may make a claim to receive two years of *Credit Monitoring and Insurance Services ("CMIS")* (with $1 million in identity theft insurance), and also elect one of the following: either *Documented Loss Payment* (in which Settlement Class Members may submit a claim for up to $2,500, upon attesting to the loss and submitting supporting documentation) (*see*

S.A. § 3.2(a)); or *Cash Fund Payment* (in which Settlement Class Members may submit a claim to receive a *pro rata* Settlement Payment in cash).[2] S.A. § 3.2(b)).[3]

15.    The Settlement Agreement also provides valuable remedial measures by Defendant to protect Class Members' Private Information going forward. All Settlement Class Members will benefit from Henry Ford's agreement to adopt, continue, and/or implement various data and information security measures, at its expense, which are designed to strengthen Henry Ford's data and information security. S.A. § 2.1.

16.    On June 20, 2024, Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 17. On June 25, 2024, the Court issued an Order granting Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, appointing The Miller Law Firm P.C. as Settlement Class Counsel, appointing Briana Tabbs, Latricia Pelt, Brandi McKenzie, and David King as the Class Representatives for settlement purposes only on behalf of the Settlement Class, and appointing RG/2 Claims Administration LLC as Claims Administrator.

17.    The global resolution achieved by the Parties in the Settlement Agreement came about through well-informed Parties and their counsel. Plaintiffs'

---

[2] The ultimate amount of the cash fund payment will depend on the number of type of claims submitted (documented loss payment or cash fund payments).

[3] The to-date number of claims submitted to RG/2 are detailed in ¶ 27 below.

Counsel received and reviewed documentation and information produced by Henry Ford. This information confirmed Plaintiffs' analysis of the legal merits in this case. Based on their experience in numerous prior data security cases, Plaintiffs' Counsel were confident that the evidence would establish Henry Ford's liability and prove damages on a class-wide basis.

18.     While Plaintiffs are confident, there is risk, as is true in all complex class actions. First, Defendant is represented by highly-skilled and qualified Counsel. Next, if the case were to continue, Defendant would file a motion to dismiss, which the parties would have to brief before the Court. And data security cases in particular face substantial hurdles in advancing past the pleading stage. The damages methodologies, for example, while sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And Defendant indicated that it would continue to assert numerous defenses on the merits.

19.     As in any data security case, establishing causation on a class-wide basis is uncertain. And Plaintiffs' Counsel believe that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. All of which could lead to a result, years down the road, in which Plaintiffs and the putative class recover nothing at all.

20.     Further, looking beyond trial, Plaintiffs' Counsel are also aware that

Defendant could appeal the merits of any adverse decision, including any class certification under Rule 23(f).

21.    In view of the contested issues involved, the risks, uncertainty, and costs of further prosecution of the litigation, the parties agreed to mediate under the guidance of Bennett G. Picker who facilitated rigorous negotiations over the course of the mediation session. The mediation was highly contested, with counsel for each side advancing their respective arguments zealously on behalf of the best interests of their clients while demonstrating their willingness to continue to litigate rather than accept a settlement not in the best interests of their clients. The negotiations were hard-fought throughout and the settlement process was conducted at arm's length and, while conducted in a highly professional and respectful manner, was adversarial. Given the risks, the ultimate resolution, a $700,000 non-reversionary Settlement Fund, is an excellent result for Settlement Class Members. And Plaintiffs here support the Settlement Agreement.

22.    Throughout this litigation, Plaintiffs' Counsel has kept in close contact with Plaintiffs through numerous emails and personal telephone calls. Plaintiffs actively assisted Plaintiffs' Counsel with their investigation. Plaintiffs sat through multiple interviews and provided supporting documentation and personal information throughout the process. In sum, Plaintiffs' personal involvement in this case has been vital in litigating this matter.

23.    As noted, Plaintiffs' Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, including: obtaining, reviewing and analyzing Plaintiffs' detailed personal records; analyzing Henry Ford's records, privacy policies, and any remedial steps; analyzing the scope and number of persons impacted by the Data Security Incident; analyzing Henry Ford's financial condition; participating in mediation; and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present.

24.    Proposed Class Counsel, The Miller Law Firm, P.C., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action, and with data security actions in particular. (*See* ECF No. 6-3). The Plaintiffs are also represented in this matter by numerous other attorneys and law firms with a vast amount of class action and data security litigation experience.

25.    In addition to Plaintiffs, Proposed Class Counsel, and all Plaintiffs' Counsel, recommends, for the Court's consideration, final approval of the $700,000 Settlement Agreement because it is well within the range of possible approval and represents a fair, reasonable, and adequate settlement and is in the best interests of the Settlement Class.

26.    The results of the claims process has also provided further indication

that the Settlement Class finds the Settlement Agreement to be fair, reasonable, and adequate. As of October 14, 2024, with the Claims Period not ending until October 28, 2024, only 6 exclusions, and no formal objections, have been received out of a total of 168,294 individuals who were Settlement Class Members.

27.     Settlement Class Members who submitted a claim will receive significant relief. With 14 days remaining in the Claims Period, as of October 14, 2024, 8,391 claim forms have been received, this includes 18 claims for Documented Loss Payments and 8,333 claim forms which seek a pro rata Cash Fund Payment, and 4,654 claims forms which elected free credit monitoring. Chiango Decl. at ¶ 13.[4] To date, $822.98 of Documented Loss claims have been allowed by RG/2. *Id.* RG/2 is continuing its review of these claims. *Id.*

28.     In sum, as Proposed Class Counsel, and the collective experience of all Plaintiffs' Counsel in complex class action cases like the present one, we fully support this Settlement.

I declare pursuant to 28 U.S.C. § 1746 and under penalty of perjury that the foregoing is true and correct.

Executed this 15th day October 2024, in Rochester, Michigan.

*/s/ E. Powell Miller*
E. Powell Miller (P39487)

---

[4] Declaration of Tina Chiango Regarding Dissemination of Notice to the Class and in Support of Plaintiffs' Motion for Final Approval is attached as Exhibit B to the Unopposed Motion for Final Approval.

# Exhibit 1

## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE HENRY FORD HEALTH SYSTEM DATA SECURITY LITIGATION | Master File No.: 2:23-cv-11736-GAD-KGA<br><br>Hon. Gershwin A. Drain<br><br>**CLASS ACTION** |

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release, dated June 14, 2024, is made and entered into by and among Plaintiffs, for themselves individually and on behalf of the Settlement Class (as defined below), and Defendant Henry Ford Health System ("Henry Ford"). This Settlement Agreement fully and finally resolves and settles all of Plaintiffs' and the Settlement Class's Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

### RECITALS

**WHEREAS**, on or around March 30, 2023, Henry Ford experienced a targeted cybersecurity attack, which Henry Ford learned may have impacted Personal Information on or around May 16, 2023 (the "Data Security Incident").

**WHEREAS**, during the period of the Data Security Incident, an unauthorized third party may have gained access to the names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers (collectively, "Personal Information") of approximately 168,000 individuals.

**WHEREAS**, Henry Ford began notifying impacted individuals about the Data Security Incident on or around July 14, 2023.

**WHEREAS**, the initial complaint arising out of the Data Security Incident was filed in the United States District Court for the Eastern District of Michigan on July 19, 2023.

**WHEREAS**, after additional complaints arising out of the Data Security Incident were filed in the ensuing weeks, counsel for Plaintiffs conferred and, on August 11, 2023, submitted a Joint Motion to Consolidate cases.

**WHEREAS**, on September 13, 2023, Plaintiffs' Joint Motion to Consolidate was granted and a schedule was set for the filing of a single amended complaint.

**WHEREAS**, Plaintiffs filed a Consolidated Amended Complaint (United States District Court for the Eastern District of Michigan, Case No. 2:23-cv-11736-GAD-KGA) on October 13, 2023.

**WHEREAS**, the Parties soon thereafter agreed to mediate the case.

**WHEREAS**, the Court thereafter extended the due date for Henry Ford's response to the Consolidated Amended Complaint on three occasions.

**WHEREAS**, in preparation for the scheduled mediation, the Parties disclosed their respective views of the litigation, including with respect to the merits, class certification and settlement, to each other and the mediator.

**WHEREAS**, on February 8, 2024, the Parties engaged in a mediation session before mediator Bennett G. Picker. The mediation assisted the Parties in resolving their outstanding differences, and ultimately led to an agreement in principle to settle this matter on or around March 18, 2024. In the weeks that followed that agreement, the Parties were able to finalize all the terms of this Settlement Agreement.

**WHEREAS**, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings as set forth in the release contained herein, by and on behalf of members of the Settlement Class defined herein, but excludes the claims of all Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

**WHEREAS**, Proposed Settlement Class Counsel ("Class Counsel"), on behalf of Plaintiffs and the Settlement Class, have thoroughly examined the law and facts relating to the matters at issue in the Action, Plaintiffs' claims, and Henry Ford's potential defenses, including conducting independent investigation and informal discovery, conferring with defense counsel through the settlement negotiation process, as well as conducting an assessment of the merits of expected arguments and defenses throughout the litigation, including on a motion for class certification. Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses Henry Ford may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Class is afforded important benefits expediently. Plaintiffs and Class Counsel have also considered the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation.

**WHEREAS**, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

**WHEREAS**, Henry Ford has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

**WHEREAS**, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and Henry Ford specifically denies any and all wrongdoing and has agreed to settle this matter to avoid protracted litigation. The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by Henry Ford of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

**WHEREAS**, the foregoing Recitals are true and correct and are hereby fully incorporated in, and made a part of, this Agreement.

**NOW, THEREFORE**, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

1.  **DEFINITIONS**

    As used in this Agreement, the following terms shall be defined as follows:

    1.1   "Action" means the consolidated class action captioned *In re Henry Ford Health System Data Security Litigation*, No. 2:23-cv-11736-GAD-KGA, filed on October 13, 2023 in the United States District Court for the Eastern District of Michigan.

    1.2   "Administrative Expenses" means all charges and expenses incurred by the Settlement Administrator in the administration of this Settlement, including, without limitation, all expenses and costs associated with claims administration, the Notice Plan and providing Notice to the Settlement Class. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

    1.3   "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

    1.4   "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

    1.5   "Business Days" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

4854-6565-2935.1

1.6    "CAFA Notice" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 5.2 of this Agreement.

1.7    "Claimant" means a Class Member who submits a Claim Form for a Settlement Payment.

1.8    "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Class Member who so requests.

1.9    "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.10   "Claims Period" means the period of time during which Class Members may submit Claim Forms to receive their given share of the Settlement Benefits and shall commence on the Notice Date and shall end on the date ninety (90) days thereafter.

1.11   "Class Counsel" means The Miller Law Firm, P.C.

1.12   "Class Member" means a member of the Settlement Class.

1.13   "Class Representatives" and "Plaintiffs" means Briana Tabbs, Latricia Pelt, Brandi McKenzie, and David King.

1.14   "Court" means the United States District Court for the Eastern District of Michigan.

1.15   "Data Security Incident" refers to the unauthorized access on or around March 30, 2023, that occurred as a result of a targeted cybersecurity attack, which Henry Ford learned on or around May 16, 2023, may have impacted Personal Information, which Henry Ford disclosed publicly on or around July 14, 2023, and is the subject of the Action.

1.16   "Documented Loss" refers to monetary losses incurred by a Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not a result of the Data Security Incident, as further described below. Documented Loss must be supported by Reasonable Documentation that a Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not traceable to the Data Security Incident and incurred between March 30, 2023 and the Claims Deadline.

1.17   "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10.1 below.

1.18   "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.19   "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of reasonable litigation costs and expenses awarded by the Court to Class Counsel, to be paid from the Settlement Fund.

1.20   "Final Approval Order" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement Agreement. A proposed Final Approval Order will be prepared by the parties and submitted contemporaneously with Plaintiffs' Motion for Final Approval of Settlement.

1.21   "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and whether to issue the Final Approval Order and Judgment.

1.22   "Henry Ford's Counsel" or references to counsel for Henry Ford means attorney Michelle R. Gomez and other attorneys at the law firm Baker & Hostetler LLP.

1.23   "Henry Ford" or "Defendant" means Defendant Henry Ford Health System and its current and former affiliates, parents, subsidiaries, and successors.

1.24   "Judgment" means the judgment to be entered by the Court.

1.25   "Long Form Notice" means the long form notice of settlement substantially in the form attached hereto as **Exhibit B**.

1.26   "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) applicable taxes, if any.

1.27   "Notice" means notice of the proposed class action settlement to be provided to Class Members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website and toll-free telephone line.

1.28   "Notice Date" means the date upon which Settlement Class Notice is initially disseminated to the Settlement Class by the Settlement Administrator, which shall be no later than thirty-five (35) days after entry of the Preliminary Approval Order.

5

1.29 "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for disseminating Notice to the Class Members of the terms of this Agreement and the Final Approval Hearing.

1.30 "Objection Deadline" means the date by which Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be sixty (60) days following the Notice Date.

1.31 "Opt-Out Period" means the period in which a Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire sixty (60) days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.32 "Parties" means the Plaintiffs and Defendant Henry Ford.

1.33 "Personal Information" means information potentially accessed, viewed, and/or obtained as a result of the Data Security Incident, including names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers, and any other types of personally identifiable information collected or maintained by Henry Ford leading to notification regarding the Data Security Incident.

1.34 "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit C**.

1.35 "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, police reports, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant; a Class Member must provide supporting documentation.

1.36 "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted on behalf of the Settlement Class in the Action related to or arising from the Data Security Incident

regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action.

1.37   "Released Parties" means Defendant and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of its past, present, and future officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing. Each of the Released Parties may be referred to individually as a "Released Party."

1.38   "Request for Exclusion" is the written communication by a Class Member in which he or she requests to be excluded from the Settlement Class pursuant to the terms of the Agreement.

1.39   "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth in Section 8 below.

1.40   "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.41   "Settlement Administrator" means RG2 Claims Administration LLC ("RG2"), the third-party class action settlement administrator selected by the Parties subject to the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive and process any Claim Forms and Requests for Exclusion from the Class. Class Counsel and Henry Ford may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.42   "Settlement Benefit(s)" means any Settlement Payment, the Credit Monitoring and Insurance Services, the Documented Loss Payments, the Cash Fund Payments, the Prospective Relief set forth in Section 2 herein, and any other benefits Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.43   "Settlement Class" and "Class" means all natural persons residing in the United States who were mailed written notification by Henry Ford that their Personal Information was potentially accessed, viewed, and/or obtained as a result of the Data Security Incident which occurred on or about March 30, 2023. Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Henry Ford, its subsidiaries, parent companies, successors, predecessors, and any entity in which Henry Ford or its

4854-6565-2935.1

parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.44 "Settlement Fund" means the sum of seven hundred thousand dollars and no cents ($700,000.00), to be paid by Henry Ford, as specified in Section 3.1 of this Agreement.

1.45 "Settlement Payment" means any payment to be made to any Class Member on Approved Claims pursuant to Section 3.2 herein.

1.46 "Settlement Website" means the Internet website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms and Requests for Exclusion, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.47 "Summary Notice" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit D**.

1.48 "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, an Administration Expense and shall be timely paid by the Settlement Administrator, out of the Settlement Fund, without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended,

8

and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.49   "Unknown Claims" means any and all Released Claims that Henry Ford or any Class Representative or Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement. Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 2.   SECURITY COMMITMENTS; PROSPECTIVE RELIEF

2.1   Henry Ford agrees to adopt, continue, and/or implement various data and information security measures, at its expense, which are designed to strengthen Henry Ford's data and information security. The Parties have agreed that Henry Ford will implement such measures for at least two years from the Effective Date of this Agreement.

2.2   Upon request, Henry Ford will provide Class Counsel with sufficient information to confirm that the data and information security measures set forth in Section 2.1 have been or will be implemented, including through a confirmatory discovery or a confidential declaration regarding the measures that Henry Ford has taken or will take in accordance with this Agreement.

## 3.   SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS

3.1   Henry Ford agrees to make or cause to be made a payment of seven hundred thousand dollars and no cents ($700,000.00).

Henry Ford agrees to create the Settlement Fund within thirty (30) days after the later of (a) entry of the Preliminary Approval Order, which shall include an order establishing the Settlement Fund pursuant to Treasury Regulation § 1.468B-1(c)(1), or (b) receipt from the Settlement Administrator of detailed wire instructions and a completed W-9 form, by making or causing to be made a deposit of seven hundred thousand dollars and no cents ($700,000.00) into an interest-bearing bank escrow account established and administered by the Settlement Administrator (the "Escrow Account"). The interest-bearing Escrow Account shall be held in a Qualified Settlement Fund (defined below) at a commercial bank with excess capital

exceeding one billion United States dollars and zero cents ($1,000,000,000.00), with a rating of "A" or higher by S&P, and in an account that is fully insured by the United States Government or the FDIC. The Settlement Fund will be used to pay Approved Claims, Administrative Expenses (to be agreed upon by the Parties), the Fee Award and Costs, and Service Awards. For the avoidance of doubt, and for purposes of this Settlement Agreement only, Henry Ford's liability shall not exceed seven hundred thousand dollars and no cents ($700,000.00).

(a)     All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class. Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Settlement Administrator. The Administrator is responsible for the payment of all Taxes.

(b)     The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 at all times after the creation of the Escrow Account. All Taxes shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel shall have no liability or responsibility for any of the Taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification). For the purpose of the Internal Revenue Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in the previous paragraph) shall be consistent with this paragraph and in all events shall reflect that all taxes (including the Taxes, any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)     The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements. The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court. All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order of the Court.

3.2     <u>Settlement Payments</u>: Each Class Member may qualify and submit a claim for two years of Credit Monitoring and Insurance Services ("CMIS") to be provided by a vendor agreed upon by the Parties. The CMIS benefit will provide one credit bureau

monitoring services and one million dollars ($1,000,000.00) in identity theft insurance. Individuals who obtained CMIS services from another provider as a result of the Data Security Incident will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

In addition to CMIS, each Class Member may qualify and submit a claim for one of the following:

(a)   Reimbursement for Actual Out-of-Pocket Losses ("Documented Loss Payment"). Class Members may submit a claim for a Settlement Payment of up to $2,500.00 (two thousand five hundred dollars) for reimbursement in the form of a Documented Loss Payment. (The total aggregate payments for such claims may not exceed $25,000.00 (twenty-five thousand dollars). In the event that the value of such claims exceeds $25,000.00, all such claims shall be paid on a pro rata basis, subject to the terms of Section 3.7 below.

To receive a Documented Loss Payment, a Class Member electing this option must submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss made under penalty of perjury; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure his or her claim, the claim will be rejected and the Class Member's claim will instead be automatically placed into the Cash Fund Payment category below.

(b)   Cash Fund Payment. In the alternative to the Documented Loss Payment, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select a Document Loss Payment.

To receive a Cash Fund Payment, a Class Member electing this option must submit to the Settlement Administrator a valid Claim Form electing to receive the Cash Fund Payment.

3.3   Settlement Payment Methods. Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event that Class Members do not exercise this option with the Settlement Administrator, they will receive their Settlement Payment via a physical check sent to them by U.S. Mail.

11

3.4     <u>Deadline to File Claims</u>. Claim Forms must be received postmarked or electronically within ninety (90) days after the Notice Date.

3.5     <u>The Settlement Administrator</u>. The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within a reasonable amount of time, the Settlement Administrator shall notify the Claimant (with a copy to Class Counsel) of the deficiencies and notify the Claimant that he or she shall have thirty (30) days to cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied, and the Class Member shall be so notified if practicable.

3.6     <u>Timing of Settlement Benefits</u>. Within ninety (90) days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member who is entitled to funds based on the selection made on their Claim Form.

3.7     <u>Distribution of Settlement Payments</u>: The Settlement is designed to exhaust the Settlement Fund. The Settlement Fund shall be used to make payments for the following: (i) Administrative Expenses, (ii) Fee Award and Costs, (iii) Service Award, and (iv) taxes. The remaining amount is the Net Settlement Fund. The Settlement Administrator will first apply the Net Settlement Fund to pay for CMIS claimed by Class Members. If Net Settlement Funds remain after paying for the CMIS, the Settlement Administrator will next use it to pay valid claims for Documented Loss Payments. The amount of the Net Settlement Fund remaining after all Documented Loss Payments are applied and the payments for the CMIS are made shall be referred to as the "Post CM/DL Net Settlement Fund." The Settlement Administrator shall then utilize the Post CM/DL Net Settlement Fund to make all Cash Fund Payments pursuant to Section 3.2(c) herein. The amount of each Cash Fund Payment shall be calculated by dividing the Post CM/DL Net Settlement Fund by the number of valid claims submitted for Cash Fund Payments.

In the event the Net Settlement Fund is insufficient to cover the payment for the CMIS claimed by Class Members, the duration of the CMIS coverage will be reduced to exhaust the fund. In such an event, no Net Settlement Funds will be distributed to Claimants for Approved Claims for Documented Loss Payments or for Cash Fund Payments. In the event that the aggregate amount of all Documented Loss Payments and payments for the CMIS exceeds the total amount of the Net Settlement Fund, then the value of the Documented Loss Payment to be paid to each Class Member shall be reduced, on a pro rata basis, such that the aggregate value of all Documented Loss Payments and payments due for CMIS does not exceed the Net Settlement Fund. In such an event, no Net Settlement Funds will be

distributed to Claimants with Approved Claims for Cash Fund Payments. All such determinations shall be performed by the Settlement Administrator.

3.8     <u>Deadline to Deposit or Cash Physical Checks</u>. Class Members with Approved Claims who receive a Documented Loss Payment or a Cash Fund Payment, by physical check, shall have sixty (60) days following distribution to deposit or cash their benefit check.

3.9     <u>Residual Funds</u>. The Settlement is designed to exhaust the Settlement Fund. To the extent any monies remain in the Net Settlement Fund more than 120 days after the initial distribution of all Settlement Payments to the Class Members, a subsequent Settlement Payment will be evenly made to all Class Members with approved claims for Cash Fund Payments who cashed or deposited the initial payment they received, provided that the average payment amount is equal to or greater than three dollars and no cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average payment in a distribution is less than three dollars ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement of the Parties to a Court-approved non-profit recipient. Should it become necessary to distribute any remaining amount of the Net Settlement Fund to a Court-approved non-profit recipient, the Parties shall petition the Court for permission to do so, providing the Court with details regarding the activities of the proposed non-profit recipient.

3.10    <u>Returned Payments</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make one additional effort to make any digital payments and engage in reasonable efforts to find a valid address (in the case of physical checks) and resend the Settlement Payment within thirty (30) days after the physical check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall make one attempt to repay or resend a Settlement Payment.

3.11    <u>Residue of Settlement Fund</u>. No portion of the Settlement Fund shall ever revert or be repaid to Henry Ford and/or its insurers after the Effective Date.

3.12    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited into the Escrow Account but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to those who paid the Settlement Fund in the event this Settlement Agreement is voided, terminated, or cancelled. In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of all Administrative Expenses incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Henry Ford and/or its insurer, and no other person or entity shall have any further claim whatsoever to such amounts.

4854-6565-2935.1

3.13    Non-Reversionary. This is a non-reversionary settlement. As of the Effective Date, all rights of Henry Ford and/or its insurer in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as set forth herein. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to Henry Ford and/or its insurers.

3.14    Use of the Settlement Fund. As further described in this Agreement, the Settlement Administrator shall use the Settlement Fund to pay for: (i) all Administrative Expenses; (ii) any Taxes; (iii) any Service Awards; (iv) any Fee Award and Costs; and (v) the Settlement Payments and/or Settlement Benefits, pursuant to the terms and conditions of this Agreement.

3.15    Payment/Withdrawal Authorization. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and Henry Ford with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.16    Payments to Class Members. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.17    Taxes. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Taxes do not include any federal, state, or local tax owed by any Claimant, Class Representative, or Class Member as a result of any benefit or payment received as a result of the Settlement. Each Claimant, Class Representative, and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.18    Limitation of Liability.

(a)    Henry Ford and its Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class

14

Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(b)      Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(c)      The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, and Henry Ford, and Henry Ford's Counsel harmless for (i) any act or omission or determination of the Settlement Administrator, or any of the Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

## 4.   RELEASE

4.1      Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Security Incident or otherwise arises out of

15

the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

4.2     The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

## 5.     REQUIRED EVENTS AND COOPERATION BY PARTIES

5.1     <u>Preliminary Approval</u>. Class Counsel shall submit this Agreement to the Court and shall promptly move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit C**.

5.2     <u>CAFA Notice</u>. Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement with the Court, Defendant (through the Settlement Administrator) shall cause to be served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. The Settlement Administrator shall also provide copies of the CAFA Notice to Class Counsel. All costs and expenses in connection with CAFA Notice will be paid from the Settlement Fund.

5.3     <u>Cooperation</u>. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement. If, for any reason, the Parties determine that the schedule set by the Court is no longer feasible, the Parties shall use their best judgment to seek the amendment of the schedule to accomplish the goals of this Agreement.

5.4     <u>Certification of the Settlement Class</u>. For purposes of this Settlement only, Plaintiffs and Henry Ford stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Henry Ford reserves the right to contest class certification for all other purposes. Plaintiffs and Henry Ford further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

5.5   Final Approval. The Parties shall request that the Court schedule the Final Approval Hearing for a date that is no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order. The Parties may file a Motion for Final Approval no later than fourteen (14) days prior to the Final Approval Hearing, and a Response to any objections to the Settlement or a Supplement to the Motion for Final Approval no later than seven (7) days prior to the Final Approval Hearing.

**6.   CLASS NOTICE, OPT-OUTS, AND OBJECTIONS**

6.1   Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2   The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3   Direct Notice. No later than the Notice Date, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate Notice to the Class Members via direct mail.

6.4   Settlement Class List. Within fourteen (14) days after the issuance of the Preliminary Approval Order, Henry Ford will provide to the Settlement Administrator a list of names and mailing addresses for any and all Class Members that it has in its possession, custody, or control. Every person on the Settlement Class List will be provided with a unique identifier by the Settlement Administrator that they will be asked for when they submit claims. Anyone who believes they are a Settlement Class Member but are not on the Settlement Class List may contact the Settlement Administrator and, upon providing reasonable proof, will be provided with a unique identifier and allowed to participate in the Settlement.

6.5   Confidentiality. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Class Members have been made; and shall not be used for any other purpose. Moreover, because the Class Member list and information contained therein will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Class Counsel and Henry Ford's Counsel, and will ensure that any information provided to it by Class Members, Class Counsel, Henry Ford, or Henry Ford's Counsel, will be secure and used solely for the purpose of effecting this Settlement.

6.6   Fraud Prevention. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Class Members, (ii) submission of more than one

17

Claim Form per Class Member, and (iii) submission of Claim Forms seeking amounts to which the claimant is not entitled. In the event a Claim Form is submitted without a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.7     <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including how submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative Consolidated Class Action Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly.

6.8     <u>Opt-Out/Request for Exclusion</u>. The Notice shall explain that the procedure for Class Members to opt out and exclude themselves from the Settlement Class is by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) days after the Notice Date. Any Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. In the event a Class Member submits a Request for Exclusion to the Settlement Administrator via US Mail, such Request for Exclusion must be in writing and must (i) identify the case name "*In re Henry Ford Health System Data Security Litigation*"; (ii) state the name, address, telephone number and unique identifier of the Class Member seeking exclusion; (iii) identify any lawyer representing the Class Member seeking to opt out; (iv) be physically signed by the person(s) seeking exclusion; and (v) must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in '*In re Henry Ford Health System Data Security Litigation*, No. 2:23-cv-11736-GAD-KGA.'" Any person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. Requests for Exclusion may only be done on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than fifty (50) timely and valid individual opt-outs (exclusions) submitted, Henry Ford may, by notifying Class Counsel and the Court in writing, void this Agreement. If Henry Ford terminates the Agreement under this section, Henry Ford shall be obligated to pay only the Administrative Expenses

incurred by the Settlement Administrator to that date for work performed in connection with the Agreement.

6.9   <u>Objections</u>. The Notice shall explain that the procedure for Class Members to object to the Settlement is by submitting written objections to the Court no later than sixty (60) days after the Notice Date (the "Objection Deadline"). Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Final Approval Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this paragraph. No Class Member or other person will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) days following the Notice Date.

All written objections and supporting papers must clearly (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the Class Member that he or she believes themself to be a member of the Settlement Class; (d) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Security Incident); (e) identify the specific factual and legal grounds for the objection; (f) identify whether the Objection is an objection to the Settlement in part or in whole; (g) state whether the Objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (h) identify all counsel representing the Class Member, if any; (i) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; (j) include all documents or writings that the Class Member desires the Court to consider; (k) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (l) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Settlement Administrator, Class Counsel identified below, and to the Court either by mailing them to: Clerk, Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226, or by filing them in person at the Courthouse.

All objections must be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this Section shall be deemed to have waived any objections and shall be forever barred from raising such objections in this or any other action or proceeding, absent further order of the Court. Without limiting the foregoing, any challenge to the Settlement Agreement, the Order Granting

19

Preliminary Approval of the Class Action Settlement Agreement, and the Final Approval Order and Judgment shall be pursuant to appeal under the applicable rules of appellate procedure and not through a collateral attack.

7.   **SETTLEMENT ADMINISTRATION**

7.1   Submission of Claims.

(a)   Submission of Electronic and Hard Copy Claims. Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

(b)   Review of Claim Forms. The Settlement Administrator will review Claim Forms submitted by Class Members to determine whether they are eligible for a Settlement Payment.

7.2   Settlement Administrator's Duties.

(a)   Cost Effective Claims Processing. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)   Dissemination of Notices. The Settlement Administrator shall disseminate the Notice Plan as provided for in this Agreement.

(c)   Maintenance of Records. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Henry Ford's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Henry Ford's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)   Receive Requests for Exclusion from Class Members and provide Class Counsel and Henry Ford's Counsel a copy thereof no later

20

than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-Out Period, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Henry Ford's Counsel;

(ii)   Provide weekly reports to Class Counsel and Henry Ford's Counsel that include, without limitation, reports regarding the number and type of Claim Forms received, the number and type of Claim Forms approved by the Settlement Administrator, and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or Henry Ford's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii)  Make available for inspection by Class Counsel and Henry Ford's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv)   Cooperate with any audit by Class Counsel or Henry Ford's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3   <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member who submits a Claim Form.

## 8.   SERVICE AWARDS

8.1   Class Representatives and Class Counsel may seek Service Awards to the Class Representatives of up to $1,500.00 (one thousand five hundred dollars and no cents) per Class Representative. Class Counsel may file a motion seeking Service Awards for the Class Representatives on or before fourteen (14) days prior to the Objection Deadline.

8.2   The Settlement Administrator shall pay the Service Awards approved by the Court to the Class Representatives from the Settlement Fund. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, within five (5) Business Days after the Effective Date.

8.3   In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the

21

amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

8.4 The Parties did not discuss or agree upon the maximum amount of Service Awards for which Class Representatives can apply until after the substantive terms of the Settlement had been agreed upon.

## 9. ATTORNEYS' FEES, COSTS, AND EXPENSES

9.1 Class Counsel may file a motion seeking an award of attorneys' fees of up to 33 1/3% (thirty-three and one-third percent) of the Settlement Fund, and, separately, reasonably incurred litigation expenses and costs (i.e., Fee Award and Costs), no later than fourteen (14) days prior to the Objection Deadline. The motion for a Fee Award and Costs shall be posted on the Settlement Website. The Settlement Administrator shall pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in the amount approved by the Court, from the Settlement Fund, within five (5) Business Days after the Effective Date.

9.2 Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves.

9.3 The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards.

## 10. EFFECTIVE DATE, MODIFICATION, AND TERMINATION

10.1 The Effective Date of the Settlement shall be the first day after all of the following conditions have occurred:

(a) Henry Ford and Class Counsel execute this Agreement;

(b) The Court enters the Preliminary Approval Order attached hereto as **Exhibit C**, without material change;

(c) Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d) The Court enters the Final Approval Order and Judgment, materially similar to the proposed that will be submitted in conjunction with Plaintiffs' motion for final approval; and

(e) The Final Approval Order and Judgment have become "Final" because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal,

22

petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

10.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment does not become Final (as described in Section 10.1(e) of this Agreement), Henry Ford may at its sole discretion terminate this Agreement on five (5) Business Days written notice from Henry Ford's Counsel to Class Counsel.

10.3    In the event the terms or conditions of this Settlement Agreement are materially modified by any court, any Party in its sole discretion to be exercised within fourteen (14) days after such modification may declare this Settlement Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Section, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification. For the avoidance of doubt, a "material modification" shall not include any reduction by the Court of the Fee Award and Costs and/or Service Awards.

10.4    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5    In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void (with the exception of Sections 10.5, and 10.6 herein) and shall have no legal effect, and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6    Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur (collectively, a "Termination Event"), Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs. In the event of a Termination Event, then (a) this Settlement Agreement shall be null and void and of no force and effect; (b) the Settlement Fund and any and all interest earned thereon, less monies expended toward settlement administration, will be returned to Henry Ford within

ten (10) days after the date the Settlement Agreement becomes null and void; and (c) any release shall be of no force or effect. In such event, unless the Parties can negotiate a modified settlement agreement, the Action will revert to the status that existed before the Settlement Agreement's execution date; the Parties will each be returned to their respective procedural postures in the litigation, and neither the Settlement Agreement nor any facts concerning its negotiation, discussion or terms will be admissible in evidence for any purpose in the Action (or in any other litigation).

## 11.   NO ADMISSION OF WRONGDOING OR LIABILITY

11.1   This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a)   shall not be offered or received against Henry Ford as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Henry Ford with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Henry Ford;

(b)   shall not be offered or received against Henry Ford as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Henry Ford;

(c)   shall not be offered or received against Henry Ford as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against Henry Ford, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted to them hereunder;

(d)   shall not be construed against Henry Ford as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

(e)   shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Class Member that any of their claims are without merit, or that any defenses asserted by Henry Ford have any merit.

24

12. **REPRESENTATIONS**

12.1 Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

13. **NOTICE**

13.1 All notices to Class Counsel provided for in this Agreement shall be sent by email (to all email addresses set forth below) and by First-Class mail to all of the following:

> **THE MILLER LAW FIRM, P.C.**
> E. Powell Miller
> 950 W. University Drive, Suite 300
> Rochester, MI 48307
> epm@millerlawpc.com
>
> *Class Counsel*

13.2 All notices to Henry Ford or Henry Ford's Counsel provided for in this Agreement shall be sent by email and First-Class mail to the following:

> Michelle R. Gomez
> **BAKER & HOSTETLER LLP**
> 1801 California Street, Ste 4400
> Denver, CO 80202-2662
> mgomez@bakerlaw.com

13.3 All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First-Class mail to the following:

> Henry Ford Health System Data Security Litigation
> RG/2 Claims Administration, LLC
> P.O. Box: 59479
> Address: Philadelphia, PA 19102-9479
> Email: info@rg2claims.com

13.4 The notice recipients and addresses designated in this Section may be changed by written notice.

## 14.    MISCELLANEOUS PROVISIONS

14.1    <u>Representation by Counsel</u>. The Class Representatives and Henry Ford represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2    <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3    <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4    <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5    <u>Drafting</u>. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof, for purpose of the invocation of the doctrine of *contra proferentum*. This Settlement Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The Parties expressly waive any otherwise applicable presumption(s) that uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.6    <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.7    <u>Waiver</u>. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.8    <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such part, term, or provision to the extent necessary to make it valid, legal, and enforceable. In any event, such part, term, or provision shall be

4854-6565-2935.1

separable and shall not limit or affect the validity, legality or enforceability of any other part, term, or provision hereunder.

14.9    Successors. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.10   Survival. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.11   Governing Law. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Michigan, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.12   Interpretation.

  (a)    Definitions apply to the singular and plural forms of each term defined.

  (b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

  (c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.13   No Precedential Value. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.14   Fair and Reasonable. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties, and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

14.15   Retention of Jurisdiction. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.16   Headings. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.17   Exhibits. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.18   <u>Counterparts and Signatures</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts. Digital signatures shall have the same force and effect as the original.

14.19   <u>Facsimile and Electronic Mail</u>. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.20   <u>No Assignment</u>. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.21   <u>Deadlines</u>. If any of the dates or deadlines specified herein fall on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.22   <u>Dollar Amounts</u>. All dollar amounts specified herein are in United States dollars, unless otherwise expressly stated.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

(signatures on following page(s))

28

**THE MILLER LAW FIRM, P.C.**

Dated: June 14 , 2024

E. Powell Miller
*Proposed Settlement Class Counsel*

**BAKER & HOSTETLER LLP**

Dated: June 14, 2024

Michelle R. Gomez
*Counsel for Defendant Henry Ford*

29

Exhibit A

**Your claim must be submitted online or postmarked by:**
**[DEADLINE]**

*In Re Henry Ford Health System Data Security Litigation,*
*Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)*

**CLAIM FORM FOR HENRY FORD HEALTH SYSTEM**
**DATA SECURITY INCIDENT BENEFITS**

**Henry Ford**

**USE THIS FORM TO MAKE A CLAIM FOR CREDIT MONITORING AND INSURANCE SERVICES, AND**
**FOR EITHER A DOCUMENTED LOSS PAYMENT, OR, ALTERNATIVELY, A CASH FUND PAYMENT**

**The DEADLINE to submit this Claim Form is: DATE**
**Claim Forms must be postmarked or submitted electronically by that date.**

**GENERAL INSTRUCTIONS**

If you are an individual who was notified that you are a Class Member of a Settlement that was reached as a result of a Data Security Incident that occurred when files at the Henry Ford Health System's ("Henry Ford") network and computer systems were accessed by an unauthorized person (the "Data Security Incident"), you are a Class Member.

As a Class Member, you are eligible to make a claim for **one of the following two options:**

(1) reimbursement of Documented Losses that are more likely than not a result of the Henry Ford Data Security Incident ("Documented Loss Payment") up to $2,500;

**OR**

(2) a *pro rata* Cash Fund Payment, the amount of which will depend on the number of Class Members who participate in the Settlement and submit valid and Approved Claims for CMIS and Documented Loss Payments.

Class Members will also be entitled to claim two years of Credit Monitoring and Insurance Services and $1 million in insurance ("CMIS").

The Credit Monitoring and Insurance Services will include the following services, among others: (i) up to $1,000,000 of identity theft insurance coverage; and (ii) two years of one-bureau credit monitoring providing, among other things, notice of changes to the Class Member's credit profile. If you file a claim for Credit Monitoring and Insurance Services, you will receive an enrollment code – valid for 365 days after the Effective Date of the Settlement – that can be used to enroll in the service.

Cash Fund Payments may be reduced or increased *pro rata* (equal share) depending on how many Class Members submit claims. Complete information about the Settlement and its benefits are available at www.xxxx.com.

**This Claim Form should be completed only by the individual who received a written notification from Henry Ford, or someone legally authorized to act on behalf of the individual who received a notification from Henry Ford.**

This Claim Form may be submitted online at www.xxxxxx.com or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

Henry Ford Health System Data Security Litigation
RG/2 Claims Administration, LLC
P.O. Box 59479
Philadelphia, PA 19102-9479

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
[**DEADLINE**]

</td><td>

*In Re Henry Ford Health System Data Security Litigation,*
*Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)*

**CLAIM FORM FOR HENRY FORD HEALTH SYSTEM**
**DATA SECURITY INCIDENT BENEFITS**

</td><td>

**Henry Ford**

</td></tr>
</table>

## I. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of Cash Fund Payments and Credit Monitoring and Insurance Services, you must notify the Settlement Administrator in writing at the address in the general instructions.

First Name

Last Name

Street Address

City

State

Zip Code

Email Address

Cellular Phone Number

Home Phone Number

Date of Birth (MM/DD/YYYY)

Unique ID Number Provided on Mailed Notice

## II. CREDIT MONITORING AND INSURANCE SERVICES ("CMIS")

If you wish to receive Credit Monitoring and Insurance Services, you must check off the box for this section, provide your email address in the space provided in Section I, above, and return this Claim Form. Submitting this Claim Form will not automatically enroll you into Credit Monitoring and Insurance Services. To enroll, you must follow the instructions sent to your email address after the Settlement is approved and becomes final (the "Effective Date"). You do not need to submit any additional documents if you are electing this category, so long as you provide your Unique ID Number that was provided on your mailed or emailed Notice.

---

**You may select ONLY ONE of the following options:**

**CASH FUND PAYMENT -** *Proceed to Section III*

**OR**

**REIMBURSEMENT FOR DOCUMENTED LOSSES** *- Proceed to Section IV*

---

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

<table>
<tr><td>

**Your claim must be submitted online or <u>postmarked by</u>:**
[**DEADLINE**]

</td><td>

*In Re Henry Ford Health System Data Security Litigation,*
*Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)*

**CLAIM FORM FOR HENRY FORD HEALTH SYSTEM**
**DATA SECURITY INCIDENT BENEFITS**

</td><td>

**Henry Ford**

</td></tr>
</table>

## III.  CASH FUND PAYMENT

If you wish to receive a Cash Fund Payment, you must check off the box for this section, and then simply return this Claim Form. You do not need to submit any additional documents if you are electing this category, so long as you provide your Unique ID Number that was provided on your mailed Notice.

## IV.  REIMBURSEMENT FOR DOCUMENTED LOSSES

Please check off this box for this section if you are electing to seek reimbursement for up to $2,500 of Documented Losses you incurred that are more likely than not a result of the Henry Ford Data Security Incident. Documented Losses include unreimbursed losses and consequential expenses that more likely than not resulted from the Henry Ford Data Security Incident and were incurred between March 30, 2023 and the Claims Deadline.

In order to make a claim for a Documented Loss Payment, **you must** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Section; and (iii) include Reasonable Documentation supporting each claimed cost along with this Claim Form. Documented Losses need to be deemed more likely than not due to the Henry Ford Data Security Incident by the Settlement Administrator based on the documentation you provide and the facts of the Henry Ford Data Security Incident. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

| Cost Type<br>(Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation<br>(Identify what you are attaching and why) |
|---|---|---|---|
| ○ Unreimbursed fraud losses or charges | ☐☐ / ☐☐ / ☐☐<br>(mm/dd/yy) | $ ☐☐☐☐☐.☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges.* |
| ○ Professional fees incurred in connection with identity theft or falsified tax returns | ☐☐ / ☐☐ / ☐☐<br>(mm/dd/yy) | $ ☐☐☐☐☐.☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return.* |
| ○ Credit freeze. | ☐☐ / ☐☐ / ☐☐<br>(mm/dd/yy) | $ ☐☐☐☐☐.☐☐ | *Examples: Notices or account statements reflecting payment for a credit freeze.* |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

<table>
<tr><td colspan="2">**Your claim must be submitted online or <u>postmarked by</u>: [DEADLINE]**</td><td>*In Re Henry Ford Health System Data Security Litigation, Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)*<br><br>**CLAIM FORM FOR HENRY FORD HEALTH SYSTEM DATA SECURITY INCIDENT BENEFITS**</td><td>**Henry Ford**</td></tr>
</table>

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Credit monitoring that was ordered after March 30, 2023 through the date on which the Credit Monitoring and Insurance Services become available through this Settlement. | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Receipts or account statements reflecting purchases made for credit monitoring and insurance services.* |
| ○ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Examples: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Henry Ford Data Security Incident.* |
| ○ Other (provide detailed description). | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form.* |

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

4860-9238-0349.1

*In Re Henry Ford Health System Data Security Litigation,*
*Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)*

**CLAIM FORM FOR HENRY FORD HEALTH SYSTEM**
**DATA SECURITY INCIDENT BENEFITS**

**Your claim must be**
**submitted online or**
**postmarked by:**
**[DEADLINE]**

**Henry Ford**

### ATTESTATION
### (REQUIRED FOR DOCUMENTED LOSS PAYMENT CLAIMS ONLY)

I, _____, declare that I suffered the Documented Losses claimed above.
    [Name]

I also attest that the Documented Losses claimed above are accurate and were not otherwise reimbursable by insurance.

I declare under penalty of perjury under the laws of Michigan that the foregoing is true and correct.

Executed on _____, in _____, _____.
        [Date]                    [City]                [State]

_____
[Signature]

## V. PAYMENT SELECTION

Please select **one** of the following payment options if you are seeking a Cash Fund Payment (Section III) or Reimbursement for Documented Losses (Section IV).

☐  Electronic Payment  - Once the Settlement is approved and if you are eligible for payment, you will receive an email from Huntington Bank's vendor advising you that your payment is ready and you may choose from Paypal; Venmo; Zelle; or Bank Transfer.

☐  Physical Check - Payment will be mailed to the address provided above.

## VI. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this Settlement and that the information provided in this Claim Form and any attachments are true and correct. I declare under penalty of perjury under the laws of the State of Michigan that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.

_____        _____        _____
        Signature                        Printed Name                        Date

**QUESTIONS? VISIT WWW._____.COM OR CALL TOLL-FREE 1-XXX-XXX-XXXX**

Exhibit B

## <u>NOTICE OF CLASS ACTION AND PROPOSED SETTLEMENT</u>

**If you were notified of a Data Security Incident occurring on or around March 30, 2023 involving Henry Ford Health System, you may be entitled to benefits from a settlement.**

*A federal court has authorized this Notice.*

*This is <u>not</u> a solicitation from a lawyer.*

- A proposed settlement has been reached in a class action lawsuit known as *In re Henry Ford Health System Data Security Litigation*, Case No. 2:23-cv-11736, filed in the United States District Court for the Eastern District of Michigan.

- This Lawsuit arises out of a targeted cybersecurity attack on Henry Ford's network and computer systems (the "Data Security Incident"), which occurred on or about March 30, 2023 and potentially resulted in unauthorized access to names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers (the "Personal Information") of Settlement Class Members. Henry Ford disagrees with Plaintiffs' claims and denies any wrongdoing.

- You are a "Settlement Class Member" if you reside in the United States and were mailed a notice letter by Henry Ford notifying you that your Personal Information was potentially accessed, viewed, and/or obtained in the Data Security Incident that occurred on or around March 30, 2023.

- Settlement Class Members can submit a Claim Form for the following:

  **Credit Monitoring and Insurance Services ("CMIS"):** One (1) year of two-credit bureau credit monitoring and $1 million in identity theft insurance, irrespective of whether they took advantage of any previous offering of credit monitoring from Henry Ford; and

  1. **Documented Loss Payment:** Reimbursement of up to $2,500 in the form of a Documented Loss Payment related to the Data Security Incident;

     *-OR-*

  2. **Cash Fund Payment:** A *pro rata* Settlement Payment in cash ("Cash Fund Payment").

**Your legal rights are affected regardless of whether you do or do not act. Read this notice carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **Submit a Claim Form** | To get Settlement benefits for Credit Monitoring and Insurance Services and Documented Loss payment or a Cash Fund Payment, you **must** submit a Claim Form. | **-DATE-** |

1

| Exclude Yourself | **Get out of the settlement. Get no money. Keep your rights.**<br><br>This is the only option that allows you to keep your right to sue about the claims in this lawsuit. You will not get any money from the Settlement.<br><br>Your request to exclude yourself must be postmarked no later than [DATE]. | -DATE- |
|---|---|---|
| Object | Tell the Court why you do not like the Settlement. You will still be bound by the Settlement if the Court approves it. Objections must be postmarked no later than [DATE]. | -DATE- |
| Do Nothing | If you do nothing, you remain in the Settlement. You give up your rights to sue and you will not get any money. | |

- These rights and options, **and the deadlines to exercise them**, are explained in this Notice.

- The Court in charge of this case must still decide whether to approve the Settlement and the requested attorneys' fees and costs. No Settlement benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

2

**WHAT THIS NOTICE CONTAINS**

**BASIC INFORMATION** ................................................................................**PAGE 4**
    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is the lawsuit a class action?
    4. Why is there a Settlement?

**WHO IS INCLUDED IN THE SETTLEMENT?** ...............................................**PAGE 5**
    5. How do I know if I am part of the Settlement?
    6. Are there exceptions to being included in the Settlement?
    7. What if I am still not sure whether I am part of the Settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ................................**PAGE 5**
    8. What does the Settlement provide?
    9. What am I giving up to receive Settlement benefits or stay in the Settlement Class?
    10. What are the Released Claims?

**HOW TO GET BENEFITS FROM THE SETTLEMENT** ......................................**PAGE 7**
    11. How do I make a claim for Settlement benefits?
    12. What happens if my contact information changes after I submit a claim?
    13. When will I receive my Settlement benefits?

**THE LAWYERS REPRESENTING YOU** ..........................................................**PAGE 7**
    14. Do I have a lawyer in this case?
    15. How will Proposed Class Counsel be paid?

**OPTING OUT FROM THE SETTLEMENT** .......................................................**PAGE 8**
    16. How do I get out of the Settlement?
    17. If I opt out, can I get anything from the Settlement?
    18. If I do not opt out, can I sue the Defendant for the same thing later?

**OBJECTING TO THE SETTLEMENT** .............................................................**PAGE 8**
    19. How do I tell the Court that I do not like the Settlement?
    20. What is the difference between objecting and opting out?

**THE FINAL FAIRNESS HEARING** ...............................................................**PAGE 10**
    21. When and where will the Court decide whether to approve the Settlement?
    22. Do I have to attend the Final Fairness Hearing?
    23. May I speak at the Final Fairness Hearing?

**IF YOU DO NOTHING** ...............................................................................**PAGE 10**
    24. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ..................................................................**PAGE 11**
    25. How do I get more information?

# BASIC INFORMATION

## 1. Why is this Notice being provided?

A federal court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval to the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Gershwin A. Drain of the United States District Court for the Eastern District of Michigan is overseeing this class action. The case is known as *In Re Henry Ford Health System Data Security Litigation,* Case No. 23-cv-11736-GAD-KGA (E.D. Mich.) (the "Litigation"). The people who filed this lawsuit are called the "Plaintiffs" or "Representative Plaintiffs" and the company sued, Henry Ford Health System is called "Henry Ford" or the "Defendant."

## 2. What is this lawsuit about?

The Plaintiffs allege that on or around March 30, 2023, an unauthorized user launched a targeted cybersecurity attack on Henry Ford's network and computer systems (the "Data Security Incident"), which potentially resulted in unauthorized access to names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers (the "Personal Information") of Settlement Class Members. Plaintiffs filed a lawsuit against Defendant, individually, and on behalf of anyone whose Personal Information was potentially accessed, viewed, and/or obtained as a result of the Data Security Incident.

The Defendant denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing, or that any law has been violated. The Defendant denies these and all other claims made in the Litigation. By entering into the Settlement, the Defendant is not admitting any wrongdoing.

## 3. Why is the lawsuit a class action?

In a class action, Representative Plaintiffs sue on behalf of all people who have similar claims. Together, all these people are called a Settlement Class or Settlement Class Members. One court resolves the issues for all Settlement Class Members, except for those Settlement Class Members who timely exclude themselves (opt out) from the Settlement Class.

The Representative Plaintiffs in this case are Briana Tabbs, Latricia Pelt, Brandi McKenzie and David King.

## 4. Why is there a settlement?

Plaintiffs and the Defendant do not agree about the claims asserted in this Litigation. The Litigation has not gone to trial, and the Court has not decided in favor of the Plaintiffs or the Defendant. Instead, Plaintiffs and the Defendant have agreed to settle the Litigation. Plaintiffs and the attorneys for the Settlement Class (subject to final approval, court-appointed "Proposed Settlement Class Counsel" or "Proposed Class Counsel") believe the Settlement is best for all Settlement Class Members because of the Settlement benefits and the risks and uncertainty associated with continued litigation and the nature of the defenses raised by the Defendant.

## WHO IS INCLUDED IN THE SETTLEMENT?

**5.   How do I know if I am part of the settlement?**

You are a Settlement Class Member if you **reside in the United States and** were mailed a notice letter from Henry Ford notifying you that your Personal Information was potentially accessed, viewed, and/or obtained in the Data Security Incident that occurred on or around March 30, 2023.

**6.   Are there exceptions to being included in the settlement?**

Yes. Excluded from the Settlement Class are (1) the Judges presiding over the Action and members of their immediate families and their staff; (2) Henry Ford, its subsidiaries, parent companies, successors, predecessors, and any entity in which Henry Ford or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

**7.   What if I am not sure whether I am part of the settlement?**

If you are still not sure whether you are a Settlement Class Member, you may go to the Settlement website at www.xxxxxxxxx.com or call the Claims Administrator's toll-free number at 1-888-xxx-xxxx.

## THE SETTLEMENT BENEFITS – WHAT YOU GET IF YOU QUALIFY

**8.   What does the settlement provide?**

If you are a Settlement Class Member, you may be able to recover the following Claimed Benefits as part of the Settlement:

**CLAIMED BENEFITS:**

All Settlement Class Members must submit a valid and timely Claim Form to receive any of the following Claimed Benefits:

### Credit Monitoring and Insurance Services ("CMIS")

The CMIS benefit will provide **one** credit bureau monitoring services and $1 million in identity theft insurance for **two** years. The CMIS benefits will be available to class members irrespective of whether they took advantage of any previous offering of credit monitoring from Henry Ford. Individuals who obtained CMIS services from another provider as a result of the Data Security Incident will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

*-AND-*

### 1.   Documented Loss Payment

Settlement Class Members who submit a valid and timely Claim Form are eligible to receive reimbursement of up to $2,500 per Settlement Class Member for their Documented Loss that is more likely than not traceable to the Data Security Incident Payment (the total aggregate payments for such claims may not exceed $25,000).

These Documented Losses may include:
  (1) Unreimbursed losses relating to fraud or identity theft;
  (2) Professional fees including attorneys' and accountants' fees, and fees for credit repair services;
  (3) Costs associated with freezing or unfreezing credit with any credit reporting agency;
  (4) Credit monitoring costs that were incurred that you attest were caused or otherwise incurred as a result of the Data Security Incident; and
  (5) Miscellaneous expenses such as notary, data charges (if charged based on the amount of data used) fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges.

You must submit documentation of the Documented Losses as part of your Documented Loss Claim. This may include credit card statements, bank statements, invoices, telephone records, and receipts. Documented Loss costs cannot be documented solely by a personal certification, declaration, or affidavit from the Claimant. Class Members who submit a Claim for a Document Loss payment will not be entitled to select a Cash Fund Payment.

*-OR-*

### 2.  Cash Fund Payment

The amount of each Cash Fund Payment shall be calculated by dividing the remaining Net Settlement Funds by the number of valid claims submitted for Cash Fund Payments, after the CMIS benefit and the Document Loss payments have been made. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select a Document Loss payment.

**9.  What am I giving up to receive Settlement benefits or stay in the Settlement Class?**

Unless you exclude yourself (opt out), you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Defendant and Released Persons about the legal issues in this Litigation that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

**10. What are the Released Claims?**

The Settlement Agreement in **Sections 4, 1.36 and 1.37** describes the Release, Released Claims, and Released Parties in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.xxxxxxxx.com or in the public Court records on file in this lawsuit. For questions regarding the Releases or Released Claims and what the language in the Settlement Agreement means, you can also contact one of the lawyers listed **in Questions 14 & 19** of this Notice for free, or you can talk to your own lawyer at your own expense.

6

# HOW TO GET BENEFITS FROM THE SETTLEMENT

**11. How do I make a claim for Settlement Benefits?**

To submit a claim for CMIS and reimbursement for a Documented Loss payment or Cash Fund Payment, you must timely submit a valid Claim Form. Settlement Class Members seeking benefits under the Settlement must complete and submit a Claim Form to the Claims Administrator, postmarked or submitted online on or before MONTH, DAY, YEAR. Claim Forms may be submitted online at **www.xxxxxxxxxx.com** or printed from the Settlement website and mailed to the Claims Administrator at the address on the form. The quickest way to submit a claim is online. Claim Forms are also available by calling 1-888-xxx-xxxx or by writing to:

Henry Ford Health System Data Security Litigation
RG/2 Claims Administration, LLC
P.O. Box 59479
Philadelphia, PA 19102-9479

**12. What happens if my contact information changes after I submit a claim?**

If you change your mailing address after you submit a Claim Form, it is your responsibility to inform the Claims Administrator of your updated information. You may notify the Claims Administrator of any changes by calling 1-888-xxx-xxxx or by writing to:

Henry Ford Health System Data Security Litigation
RG/2 Claims Administration, LLC
P.O. Box 59479
Philadelphia, PA 19102-9479

**13. When will I receive my Settlement benefits?**

If you file a timely and valid Claim Form, any CMIS benefit you select and your payment will be provided by the Claims Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check **www.xxxxxxxxx.com** for updates.

# THE LAWYERS REPRESENTING YOU

**14. Do I have a lawyer in this case?**

Yes, subject to final approval, the Court has provisionally appointed Interim Lead Counsel The Miller Law Firm, P.C. as Settlement Class Counsel to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this litigation.

**15. How will Proposed Class Counsel be paid?**

Proposed Class Counsel will file a motion asking the Court to award attorneys' fees and costs not to exceed (1/3) of the Settlement Fund, or approximately $233,333.33. They will also ask the Court to approve service awards for up to $1,500 to each of the Class Representatives for participating in this Litigation and for their efforts in achieving the Settlement. If awarded by the Court, attorneys' fees and costs and the service awards will be paid out of the Settlement Fund. The Court may award less than these amounts.

Proposed Class Counsel's application for attorneys' fees, costs, and service awards will be made available on the Settlement website at www.xxxxxxxx.com before the deadline for you to comment or object to the Settlement.

## OPTING OUT FROM THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Defendant on your own based on the claim raised in this Litigation or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from or "opting out" of the Settlement.

### 16. How do I get out of the Settlement?

To opt out of the Settlement, you must mail a written notice of intent to opt out. The written notice must be signed, include your name and address, and clearly state that you wish to be excluded from the Settlement Class.

The opt-out request must be **postmarked** and set to the Claims Administrator at the following address by MONTH, DAY, 202X:

> Henry Ford Health System Data Security Litigation
> RG/2 Claims Administration, LLC
> P.O. Box 59479
> Philadelphia, PA 19102-9479

You cannot exclude yourself by telephone or by email.

### 17. If I opt out, can I get anything from the Settlement?

No. If you opt out, you give up any right to sue the Defendant and Released Parties for the claims this Settlement resolves and Releases relating to the Data Security Incident. You must opt out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

### 18. If I do not opt out, can I sue the Defendant for the same thing later?

No. Unless you opt out, you give up any right to sue the Defendant and Released Parties for the claims this Settlement resolves and Releases relating to the Data Security Incident. You must opt out of this Litigation to start or continue with your own lawsuit or be part of any other lawsuit against the Defendant or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 19. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement or requested attorneys' fees and costs. You can also give reasons why you think the Court should not approve the Settlement or attorneys' fees and costs. To object, you must file timely written notice as provided below no later than -DATE-, stating you object to the Settlement. The objection must include all the following additional information:

(1)  The case name and docket number, *In Re Henry Ford Health System Data Security Litigation*, **Case No. 23-cv-11736-GAD-KGA (E.D. Mich.)**;

(2)  Your full name, current mailing address, and telephone number;

(3)  A statement by you that you believe yourself to be a member of the Settlement Class;

(4)  Proof that you are a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Security Incident);

(5)  The specific factual and legal grounds for the objection;

(6)  Whether the Objection is an objection to the Settlement in part or in whole;

(7)  Whether the objection applies only to you, a subset of the Settlement Class, or the entire Settlement Class;

(8)  All counsel representing you, if any;

(9)  A list, including case name, court, and docket number, of all other cases in which you and/or your counsel has filed an objection to any proposed class action settlement in the past five (5) years;

(10)  All documents or writings that you want the Court to consider;

(11)  A statement regarding whether you or your counsel intends to appear at the Final Approval Hearing; and

(12)  Your signature or your duly authorized attorney or representative's signature.

To be timely, written notice of an objection in the appropriate form containing the case name and docket number (*In Re Henry Ford Health System Data Security Litigation,* Case No. 23-cv-11736- GAD-KGA (E.D. Mich.)) must be filed with the Court by -**DATE**-, with copies to Proposed Class Counsel and Counsel for Defendant:

| Court | Proposed Class Counsel | Counsel for Defendant |
|---|---|---|
| Hon. Gershwin A. Drain U.S. District Court, E.D. Mich., Theodore Levin U.S. Courthouse 231 W. Lafayette Blvd., Detroit, Michigan 48226 | E. Powell Miller The Miller Law Firm, P.C 950 W University Dr., Ste. 300 Rochester, MI 48307 (248) 609-7331 | Michelle R. Gomez Baker & Hostetler LLP 1801 California St, Ste 4400 Denver, CO 80202-2662 (303) 861-0600 |

Any Settlement Class Member who fails to comply with the requirements for objecting in Section 6 of the Settlement Agreement waives and forfeits any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.

Any objector or his or her counsel may also file Objections with the Court through the Court's Electronic Claims Filing system, with service on Proposed Settlement Class Counsel and Defendant's Counsel made through the Electronic Claims Filing system. For all objections mailed to Proposed Settlement Class Counsel and counsel for Defendant, Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

**20. What is the difference between objecting and asking to opt out?**

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees and costs. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt out, you cannot object to the Settlement.

## THE FINAL FAIRNESS HEARING

**21. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Fairness Hearing on -DATE-, at -TIME- before Judge Gershwin A. Drain, at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Proposed Class Counsels' application for attorneys' fees, costs and expenses, and the service awards to the Plaintiff. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

Note: The date and time of the Final Fairness Hearing are subject to change. The Court may also decide to hold the hearing via Zoom or by phone. Any change will be posted at **www.xxxx.com.**

**22. Do I have to attend the Final Fairness Hearing?**

No. Proposed Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to discuss it. As long as you timely file or mail your written objection, the Court will consider it.

**23. May I speak at the Final Fairness Hearing?**

Yes, as long as you do not exclude yourself (opt out), you can (but do not have to) participate and speak for yourself in this Litigation and Settlement. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself. If you want to appear, or if you want your own lawyer instead of Proposed Class Counsel to speak for you at the hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 19 above—and specifically include a statement whether you and your counsel will appear at the Final Fairness Hearing.

## IF YOU DO NOTHING

**24. What happens if I do nothing at all?**

If you are a Settlement Class Member and do nothing, you will not receive any Settlement benefits. You will give up rights explained in the "Opting Out from the Settlement" section of this Notice, including your right to start or continue with a lawsuit, or be part of any other lawsuit against Defendant, the Related Entities, or any of the Released Persons about the legal issues in this Litigation that are released by the Settlement Agreement relating to the Data Security Incident.

# GETTING MORE INFORMATION

**25. How do I get more information?**

This notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.xxxxxxx.com, by calling 1-888-xxx-xxxx, or by writing to:

Henry Ford Health System Data Security Litigation
RG/2 Claims Administration, LLC
P.O. Box 59479
Philadelphia, PA 19102-9479
info@rg2claims.com

**PLEASE DO NOT CALL THE COURT OR
THE COURT'S CLERK OFFICE, DEFENDANT, OR DEFENDANT'S COUNSEL
REGARDING THIS NOTICE.**

Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE HENRY FORD HEALTH SYSTEM DATA SECURITY LITIGATION | Master File No.: 2:23-cv-11736-GAD-KGA <br><br> Hon. Gershwin A. Drain <br><br> **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

## [PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION <u>SETTLEMENT AND PROVIDING NOTICE</u>

This case is before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"), brought by Plaintiffs Briana Tabbs, Latricia Pelt, Brandi McKenzie, and David King (collectively, "Plaintiffs"). The Court, having considered the Unopposed Motion, the supporting Brief, the Parties' Settlement Agreement dated June 14, 2024 (the "Settlement Agreement"), attached to the Unopposed Motion as Exhibit 1; the proposed Claim Form, Long Form Notice, and Short Form Notice (attached as Exhibits A, B, and D, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown, **GRANTS** the Motion.

**IT IS HEREBY ORDERED** as follows:

**<u>Preliminary Approval of Settlement Agreement</u>**

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.      This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, Defendant Henry Ford Health System ("Henry Ford" or "Defendant"), and any party to any agreement that is part of or related to the Settlement.

3.      The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminary approved and notice of the settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

**<u>Class Certification</u>**

4.      Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

> All natural persons who are residents of the United States and who were mailed written notification by Henry Ford that their Personal Information was accessed, viewed, and/or obtained by an unauthorized party as a result of the Data Security Incident which occurred on or about March 30, 2023.

5.      Excluded from the Settlement Class are: (i) Defendant and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to

evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

6.     Subject to final approval of the Settlement, the Court finds and concludes for settlement purposes only that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

   a. The Settlement Class is so numerous that joinder of all members is impracticable;

   b. There are questions of law of fact common to the Settlement Class;

   c. Plaintiffs and Proposed Settlement Class Counsel (as defined below) fairly and adequately represent that Settlement Class;

   d. The claims of Plaintiffs are typical of those of Settlement Class Members;

   e. Common issues predominate over any individual issues affecting the members of the Settlement Class;

   f. Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

   g. Settlement of the Litigation on a class-action basis is superior to other means of resolving this matter.

7.     The Court provisionally appoints The Miller Law Firm P.C. as Settlement Class Counsel (hereinafter "Proposed Class Counsel"), having

3

determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.     The Court hereby appoints Briana Tabbs, Latricia Pelt, Brandi McKenzie, and David King as the Class Representatives for settlement purposes only on behalf of the Settlement Class.

<u>**Notice to Settlement Class Members**</u>

9.     Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Form Notice and the Short Form Notice (the "Settlement Notices"), attached as Exhibits B and D, respectively, to the Settlement Agreement and attached to this Order as Exhibits 1B & 1C, and finds that the dissemination of these Settlement Notices substantially in the manner and form set forth in §§ 6.1-6.3 of the Settlement Agreement complies fully with the requirements of the Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.     The Court further approves the Claim Form, substantially similar to Exhibit A to the Settlement Agreement attached as Exhibit 1A to this Order, which will be available both on the Settlement Website and by request.

11.     The notice procedures described above are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the

Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.     The Court hereby orders that, within fourteen (14) days of entry of this Order, Henry Ford shall provide to the Claims Administrator the contact information of Settlement Class Members, including names and physical addresses, that is currently in Henry Ford's possession.

13.     No later than thirty-five (35) days from the date of this Order preliminarily approving the Settlement ("Notice Commencement Date"), Proposed Class Counsel shall cause the Claims Administrator to send via U.S. mail the Short Form Notice to each Settlement Class member and shall cause to be published the Long Form Notice, thereby making it available to the rest of the Settlement Class as stated in the proposed Notice Plan.

14.     Contemporaneous with seeking Final Approval of the Settlement, Proposed Class Counsel and Henry Ford shall cause to be filed with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to complying with the Notice Plan.

15.     All costs incurred in disseminating and otherwise in connection with the Settlement Notices shall be paid from the Settlement Fund.

16.     The Settlement Notices and Claim Form satisfy the requirements of due process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made available to the Settlement Class as set forth on the Notice Plan and shall be made available to any potential Class Member that requests one.

**Responses by Settlement Class Members and the
Scheduling of the Final Approval Hearing**

17.     Settlement Class Members may opt-out or object up to sixty (60) days from the Notice Commencement Date (the "Opt-Out Deadline").

18.     Any members of the Settlement Class who or that wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Claims Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class, but must in each instance individually and personally sign and submit an opt-out request. All Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Henry Ford.

19.     Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be

bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|---|---|
| Henry Ford provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval |
| Henry Ford to provide contact information for Settlement Class Members | Within 14 days after entry of Preliminary Approval Order |
| Notice Program commences | Within 35 days after entry of Preliminary Approval Order |
| Notice Program concludes | Within 45 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d): | 90 days after the appropriate governmental offices are served with CAFA notice |
| Postmark deadline for request for exclusion (opt-out) or objections: | 60 days after commencement of Notice Program |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards: | No later than 14 days prior to the deadline for request for exclusion (opt-out) or objections |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Fairness Hearing |

| Postmark/Filing deadline for members of the Class to file claims | 90 days after commencement of the Notice Program |
|---|---|
| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Fairness Hearing |
| Deadline for Claims Administrator to file or cause to be filed, if necessary, a supplemental declaration with the Court | At least 5 days prior to the Final Fairness Hearing |
| Final Approval Hearing | To be set by the Court and held at the United States District Court for the Eastern District of Michigan, Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, MI 48226 in Courtroom 761 and/or by virtual attendance, details of which to be provided before the Final Approval Hearing on the Settlement Website. |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be held before this Court on a date set by the Court.

22.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Proposed Class Counsel's application for award of attorney's fees and costs, and request for

the Court to award a service award to the named Plaintiffs, shall also be heard at the time of the hearing.

23.    The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing and publication of notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.    Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Proposed Class Counsel.

25.    Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry

of Final Approval Order and the judgment approving the Settlement, (c) Proposed

Class Counsel's application for fees and expenses, or (d) the service award request,

by mailing a written objection, with a postmark date no later than the Objection Date,

to Proposed Class Counsel and Henry Ford's Counsel. The Settlement Class

Member making the objection (the "Objector") or his or her counsel may also file

an objection with the Court through the Court's Electronic Court Filing ("ECF")

system, with service on Proposed Class Counsel and Henry Ford's Counsel made

through the ECF system. For all objections mailed to Proposed Class Counsel and

Henry Ford's Counsel, Proposed Class Counsel will file them with the Court with

the Motion for Final Approval of the Settlement.

26.     The Objector's objection must be either (1) filed with the Court no later

than sixty (60) days after the Notice Commencement Date or (2) mailed to Proposed

Class Counsel and Henry Ford's Counsel, with a postmark date of no later than sixty

(60) days after the Notice Commencement Date. To be valid, the objection must

include: (i) the Objector's full name and address; (ii) the case name and docket

number, *In re Henry Ford Health System Data Security Breach Litigation*, Case No.

2:23-cv-11736-GAD-KGA (E.D. Mich.); (iii) information identifying the Objector

as a Settlement Class Member, including proof that the Objector is a member of the

Settlement Class (e.g., copy of the Objector's settlement notice, copy of original

notice of the Data Incident, or a statement explaining why the Objector believes he

or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the Objector believes applicable; (v) the identity of any and all counsel representing the Objector in connection with the objection; (vi) a statement whether the Objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vii) the Objector's signature or the signature of the Objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection.

27.     Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Proposed Class Counsel's application for fees, costs, and expenses; and/or (e) the service award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.     Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.     Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Henry Ford with respect to all of the Released Claims.

30.     Henry Ford, through the Settlement Administrator, shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.     Proposed Class Counsel and Henry Ford's Counsel shall cooperate promptly and fully in the preparation of such notices, including providing Henry Ford with any and all information in its possession necessary for the preparation of these notices. Henry Ford shall provide, or cause to be provided, courtesy copies of the notices to Proposed Class Counsel for the purpose of implementing the settlement. The Settlement Administrator shall provide notice to Proposed Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

### Administration of the Settlement

32.     The Court hereby appoints the claims administrator proposed by the parties, RG2 Claims Administration LLC ("Claims Administrator"). Responsibilities of the Claims Administrator shall include: (a) establishing a post

office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to claims administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Claims Administrator and costs of administration shall be paid from the Settlement Fund.

33.   In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Henry Ford and any other Released Entity, and Henry Ford and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and

shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.     Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Henry Ford as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**


Dated: _____          _____
                                     The Honorable Gershwin A. Drain
                                     United States District Court Judge

14

Exhibit D

<u>Court Approved Legal Notice</u>

**A proposed Settlement has been reached in a class action lawsuit known as *In re Henry Ford Health System Data Security Litigation*, Case No. 2:23-cv-11736, filed in the United States District Court for the Eastern District of Michigan.**

*This is <u>not</u> a solicitation from a lawyer.*

**This is NOT a Claim Form.**

**For more information about the Settlement and how to file a Claim Form visit or call:**

www.xxxxxxxxx.com

1-888-xxx-xxxx

Henry Ford Health System Data Security Litigation
RG/2 Claims Administration, LLC
P.O. Box 59479
Philadelphia, PA 19102-9479

_____

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

A settlement has been reached in a class action lawsuit against Henry Ford Health System ("Henry Ford") arising out of a targeted cybersecurity attack (the "Data Security Incident") on Henry Ford's network and computer systems that potentially resulted in unauthorized access to names, genders, dates of birth, ages, lab results, procedure types, diagnoses, dates of service, telephone numbers, medical record numbers and/or internal tracking numbers ("Personal Information") of Settlement Class Members. The lawsuit alleges that Henry Ford was responsible for the Data Security Incident because it did not take appropriate care to protect Personal Information from unauthorized disclosure. Henry Ford disagrees with and denies the claims, and the Court has not determined that Henry Ford did anything wrong.

**<u>Who is Included?</u>** All natural persons who are residents of the United States who were mailed written notification by Henry Ford that their Personal Information was accessed, viewed, and/or obtained by an unauthorized party as a result of the Data Security Incident reported to have occurred on or about March 30, 2023.

**<u>What does the Settlement Provide?</u>** The Settlement establishes a $700,000.00 Settlement Fund to be used to pay for Credit Monitoring and Insurance Services, reimbursement of Documented Losses, and Cash Fund Payments to valid claimants; costs of Notice and administration; Service Awards to the Class Representatives; and the Attorney Fee Award and Costs. Henry Ford has also agreed to continue or undertake certain information security measures. Claimants may select the following forms of Settlement relief: Credit Monitoring and Insurance Services, AND (a) Documented Loss payments, OR (b) a Cash Fund Payment, as described below:

    <u>Credit Monitoring and Insurance Services</u> – two years of Credit Monitoring and Insurance Services; AND

- <u>Documented Loss Payments</u> – reimbursement for certain Documented Losses, i.e., money spent or lost, that is more likely than not related to the Henry Ford Data Security Incident (up to $2,500 per claimant, though this category may not exceed $25,000 in aggregate), not otherwise reimbursable by insurance; OR
- <u>Cash Fund Payments</u> – a *pro rata* cash payment, depending on the number of Settlement Class Members that participate in the Settlement.

**<u>How To Get Benefits:</u>** You must complete and file a Claim Form online or by mail postmarked by **Month XX, 202x**, including required documentation. You can file your claim online at **www.xxxxxxxxx.com**. You may also get a paper Claim Form at the website or by calling the toll-free number, and you then submit this paper Claim Form by mail.

**<u>Your Other Options.</u>** If you do not want to be legally bound by the Settlement, you must exclude yourself by **Month XX, 202x**. If you do not exclude yourself, you will release any claims you may have against Henry Ford or Released Parties (as defined in the Settlement Agreement) related to the Henry Ford Data Security Incident, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **Month XX, 202x**.

**<u>The Final Approval Hearing.</u>** The Court has scheduled a hearing in this case (*In Re Henry Ford Health System Data Security Litigation*, Case No. 23-cv-11736 (E.D. Mich.)) for **Month XX, 202x**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, so please check the settlement website for those details.

**More Information.** Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at **www.xxxxxxxxx.com**, or by calling toll free 1-888-xxx-xxxx.

# Exhibit 2

# THE MILLER LAW FIRM

## A Professional Corporation

**950 W. University Dr., Ste. 300**
**Rochester, MI  48307**
**(248) 841-2200**

**www.millerlawpc.com**

# THE MILLER LAW FIRM, P.C. | FIRM RESUME

The Miller Law Firm, P.C. (the "Firm") is one of the premier litigation law firms in the United States and Michigan's leading class action firm. A recognized leader in the area of complex commercial litigation, the Firm is ranked Tier 1 in Detroit by *U.S. News-Best Lawyers* "Best Law Firms" for commercial litigation. Since the Firm's founding in 1993, the Firm has developed a national reputation for successfully prosecuting securities fraud and consumer class actions on behalf of its clients. As Lead Counsel or Co-Lead Counsel appointed by judges throughout the United States in some of the country's largest and most complex cases, the Firm has achieved over $3 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

### **Highlights of Results Obtained**

2024    *Schreiber et al v. Mayo Found. for Medical Education and Research*
        (United States District Court, Western District of Michigan)
        (Case No. 2:22-cv-00188) (Class Counsel)

        Result: $52.5 million settlement

        *Pratt v. KSE Sportsman Media, Inc.*
        (United States District Court, Eastern District of Michigan)
        (Case No. 1:21-cv-11404) (Class Counsel)

        Result: $9.5 million settlement

2023    *Cooper (nee Zimmerman) v. The 3M Company and Wolverine*
        (United States District Court, Western District of Michigan)
        (Case No. 1:17-cv-01062) (Co-Lead Counsel)

        Result: $54 million settlement

        *Reynolds v. FCA*
        (United States District Court, Eastern District of Michigan)
        (Case No. 2:19-cv-11745) (Co-Lead Counsel)

        Result: Over $30 million settlement value

        *Kain v. The Economist Newspaper NA, Inc.*
        (United States District Court, Eastern District of Michigan)
        (Case No. 4:21-cv-11807) (Co-Lead Counsel)

        Result: $9.5 million settlement

*Ketover v. Kiplinger Washington Editors, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 1:21-cv-12987) (E. Powell Miller, Phil Fraietta, Joe
Marchese, Frank Hedin)

Result: $6.8 million settlement

*Moeller v. The Week Publications, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10666) (E. Powell Miller, Phil Fraietta, Joe
Marchese, Frank Hedin)

Result: $5.1 million settlement

*Thomsen v. Morley*
(United States District Court, Eastern District of Michigan)
(Case No. 1:22-cv-10271) (Plaintiffs' Executive Committee)

Result: $4.3 million settlement

2022    *In re; National Prescription Opiate Litigation (CVS, Walgreens and
Walmart retail pharmacy and two manufacturers Allergan and Teva)*
(United States District Court, Northern District Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties
who were parties to and benefited from the global settlement)

Result: $18.5 billion global settlement plus Narcan or additional
cash from Teva

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales
Practices and Antitrust Litig.*,
(United States District Court, District of Kansas)
(Case No. 2:17-md-02785) (Plaintiffs' Steering Committee)

Result: $609 million in settlements

*Wood, et al. v. FCA US LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 5:20-cv-11054) (Co-Lead Counsel)

Result: Over $108 million settlement value

*Persad, et al. v. Ford Motor Company*
(United States District Court, Eastern District of Michigan)
(Case No. 2:17-cv-12599) (Co-Lead Counsel)

Result: Over $42 million settlement value

*Loftus v. Outside Integrated Media, LLC*
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11809) (Co-Lead Counsel)

Result:   Approximately $1 million settlement

*Graham, et al. v. University of Michigan, et al.*,
(United States District Court, Eastern District of Michigan)
(Case No. 2:21-cv-11168) (Co-Lead Counsel)

Result:   Injunctive relief settlement mandating University reforms to address and prevent sexual misconduct

John Doe MC-1 v. University of Michigan, et. al.
(United States District Court, Eastern District of Michigan)
(Case No. 2:20-cv-10568) (Represented several victims of sexual abuse in private, confidential settlement)

Result:  Confidential settlement

2021        *In re; National Prescription Opiate Litigation (Distributor and Manufacturer Janssen Pharmaceuticals Settlement)*
(United States District Court, Northern District of Ohio, MDL Court)
(Case No. 1:17-md-2804) (Represented several Michigan counties who were parties to and benefited from the global settlement.)

Result:  $26 billion global settlement

*Simmons, et al. v. Apple, Inc.*
(Superior Court of the State of California, County of Santa Clara)
(Case No. 17CV312251) (Co-Lead Counsel)

Result:  $9.75 million settlement

*Dougherty v Esperion Therapeutics, Inc., et. Al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-10089) (Local Counsel)

Result:  $18.25 million settlement

*In re Broiler Chicken Antitrust Litigation*
(United States District Court, Northern District of Illinois, Eastern Division) (Case No. 1:16-cv-08637)

Result:  $93.5 million in settlements in 2021

2020     *In re Resistors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 3:15-cv-03820) (Informal member of Steering Committee)

Result:  $33.4 million in settlements in 2020

*In re Capacitors Antitrust Litigation*
(United States District Court, Northern District of California)
(Case No. 03:17-md-02801) (Informal member of Steering Committee)

Result:  $30.95 million in settlements in 2020

2019     *Carl Palazzolo, et al. Fiat Chrysler Automobiles N.V., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 16-cv-12803) (Co-Lead Counsel)

Result:  $14.75 million settlement

*Zimmerman v. Diplomat Pharmacy, Inc., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:16-cv-14005) (Liaison Counsel)

Result:  $14.1 million settlement

2018     *In re Freight Forwarders Antitrust Litigation*
(United States District Court, Eastern District of New York)
(Case No. 08-cv-00042) (Counsel for Class Representative)

Result:  $1 billion settlement

2017     *Foster v. L3 Communications, EO Tech*
(United States District Court, Western District of Missouri)
(Case No. 15-cv-03519) (Co-Lead Counsel)

Result:  $51 million settlement (100% recovery)

2016     *In re Automotive Parts Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 12-md-02311) (Liaison Counsel)

Result:  Over $1 billion in settlements

*GM Securities Class Action/New York Teachers Retirement System v. General Motors Company*
(United States District Court, Eastern District of Michigan)
(Case No. 4:14-cv-11191) (Local Counsel)

Result:   $300 million settlement

*ERISA Class Action/Davidson v. Henkel Corporation*
(United Sates District Court, Eastern District of Michigan)
(Case No. 12-cv-14103) (Lead Counsel)

Result:  $3.35 million settlement (100% Recovery for 41 member class)

*Pat Cason-Merenda and Jeffrey A. Suhre v. VHS of Michigan, Inc.,*
*dba Detroit Medical Center (Antitrust)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-cv-15601) (Special Trial Counsel)

Result:  $42 million settlement

2015      *In re AIG 2008 Securities Litigation*
(United States District Court, Southern District of New York)
(Case No. 08-cv-04772) (Co-Lead Counsel)

Result:   $970.5 million settlement

2014      *City of Farmington Hills Employees Retirement System v. Wells*
*Fargo Bank, N.A.*
(United States District Court, District of Minnesota)
(Case No. 10-cv-04372) (Co-Lead Counsel and Primary Trial Counsel)

Result:  $62.5 million settlement

*The Shane Group, Inc., et al. v. Blue Cross Blue Shield of Michigan*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-14360) (Co-Lead Counsel)

Result:  $30 million settlement

*In re Refrigerant Compressors Antitrust Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 09-md-02042) (Co-Lead Counsel)

Result:   $30 million settlement

2013      *The Board of Trustees of the City of Birmingham Employees et. al. v.*
*Comerica Bank et. al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-13201) (Co-Lead Counsel)

Result:   $11 million settlement

*In Re Caraco Pharmaceutical Laboratories, Ltd. Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:09-cv-12830) (Co-Lead Counsel)

Result:  $2.975 million settlement

*In Re TechTeam Global Inc. Shareholder Litigation*
(Oakland County Circuit Court, State of Michigan)
(Case No. 10-114863-CB)  (Liaison Counsel)

Result:  $1.775 million settlement

*General Retirement System of the City of Detroit and Police and Fire Retirement System of the City of Detroit vs. UBS Securities, LLC (Structured Investment Vehicle)*
(United States District Court, Eastern District of Michigan)
(Case No. 2:10-cv-13920) (Lead Counsel)

Result:   Confidential settlement

2010       *Epstein, et al. v. Heartland Industrial Partners, L.P., et al.*
(United States District Court, Eastern District of Michigan)
(Case No. 2:06-CV-13555) (Substantial role)

Result:  $12.2 million settlement

*In Re Skilled Healthcare Group, Inc. Securities Litigation*
(United States District Court, Central District of California)
(Case No. 09-5416) (Substantial role)

Result:  $3 million settlement

2009       *In Re Proquest Company Securities Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 4:06-CV-11579) (Substantial role; argued Motion to Dismiss)

Result:  $20 million settlement

*In Re Collins & Aikman Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 03-CV-71173) (Substantial role)

Result:  $10.8 million settlement

*In re IT Group Securities Litigation*
(United States District Court, Western District of Pennsylvania)

(Civil Action No. 03-288) (Co-Lead Counsel)

Result:  $3.4 million settlement

2008      *In re Mercury Interactive Securities Litigation*
(United States District Court, Northern District of California)
(Civil Action No. 03:05-CV-3395-JF) (Substantial role)

Result:  $117 million settlement

*In Re General Motors Corporation Securities and Derivative Litigation*
(United States District Court, Eastern District of Michigan)
(Master Case No. 06-MD-1749) (Co-Lead Counsel)

Status: Obtained major corporate governance reforms to address accounting deficiencies

2007      *Wong v. T-Mobile USA, Inc.*
(United States District Court, Eastern District of Michigan)
(Case No. 05-CV-73922) (Co-Lead)

Result:  Settlement for 100% of damages

*In re CMS Energy Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No. 2:02 CV 72004) (Substantial role)

Result:  $200 million settlement

2005      *In re Comerica Securities Fraud Litigation*
(United States District Court, Eastern District of Michigan)
(Case No. 2:02-CV-60233) (Substantial role)

Result:  $21 million in total settlements

*Street v. Siemens*
(Philadelphia State Court)
(Case No. 03-885) (Co-Lead Counsel)

Result:  $14.4 million (100% recovery)

*Redmer v. Tournament Players Club of Michigan*
(Wayne County Circuit Court) (Case No. 02-224481-CK) (Co-Lead)

Result:  $3.1 million settlement

2004      *Passucci v. Airtouch Communications, Inc.*

(Wayne County Circuit Court) (Case No. 01-131048-CP) (Co-Lead)

Result:  Estimated settlement value between $30.9 and $40.3 million

*Johnson v. National Western Life Insurance*
(Oakland County Circuit Court)
(Case No. 01-032012-CP) (Substantial role)

Result:  $10.7 million settlement

2003    *Felts v. Starlight*
(United States District Court, Eastern District Michigan)
(Case No. 01-71539) (Co-Lead)

Result: Starlight agrees to stop selling ephedrine as an ingredient in its weight loss dietary supplement product

*In re Lason Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 99-CV-76079) (Co-Lead)

Result: $12.68 million settlement

2001    *Mario Gasperoni, et al. v. Metabolife International, Inc.*
(United States District Court, Eastern District Michigan)
(Case No. 00-71255) (Co-Lead)

Result: Nationwide settlement approved mandating changes in advertising and labeling on millions of bottles of dietary supplement, plus approximately $8.5 million in benefits

1999    *Pop v. Art Van Furniture and Alexander Hamilton Insurance Company*
(Wayne County Circuit Court) (Case No. 97-722003-CP) (Co-Lead)

Result: Changes in sales practices and $9 million in merchandise.

*Schroff v. Bombardier*
(United States District Court, Eastern District Michigan)
(Case No. 99-70327) (Co-Lead)

Result:  Recall of more than 20,000 defective Seadoos throughout North America; repair of defect to reduce water ingestion problem; extended warranties; and approximately $4 million in merchandise.

*In re National Techteam Securities Litigation*
(United States District Court, Eastern District Michigan)
(Master File No.  97-74587) (Substantial role)

Result:  $11 million settlement

*In Re F&M Distributors, Inc., Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No. 95-CV-71778-DT) (Minor role)

Result:  $20 million settlement

1998    *In Re Michigan National Corporation Securities Litigation*
(United States District Court, Eastern District Michigan)
(Case No 95 CV 70647 DT) (Substantial role)

Result:  $13.3 million settlement

1995    *In re Intel Pentium Processor Litigation*
(Superior Court, Santa Clara County, California) (Master File No. 745729)
(Substantial role)

Result: Intel agreed to replace millions of defective Pentium chips on demand
without any cost to consumers



| | |
|---|---|
| **ROCHESTER**<br>950 W. UNIVERSITY DR.<br>SUITE 300<br>ROCHESTER, MI 48307 | **DETROIT**<br>211 WEST FORT ST.<br>SUITE 705<br>DETROIT, MI 48226 |

248-841-2200 | WWW.MILLER.LAW

# E. POWELL MILLER, PARTNER



✉ **EPM**@millerlawpc.com

Powell Miller has been recognized as Michigan's number one ranked attorney by Super Lawyers Magazine for 2020 and 2023. He has also been named one of the Top 10 lawyers in Michigan for fourteen consecutive years, from 2009-present, by Super Lawyers Magazine, and in 2010, 2015, 2019 and 2020 he was the recipient of the Best Lawyers – Lawyer of the Year in the category of Bet-The-Company Litigation. In 2017, Mr. Miller was the recipient of the Judge Friedman and Cook Civility Award, which is awarded to only one lawyer each year. He has been named as one of the Best Lawyers in America every year since 2005. Mr. Miller has earned Martindale-Hubbell's highest rating, AV® Preeminent™ 5/5.0 for legal ethics and ability and a 10/10 from AVVO a public rating system. Mr. Miller is also ranked as only one of nine in Michigan to receive the highest Band 1 rating by Chambers USA, describing Mr. Miller as a "Superb trial lawyer" who "routinely acts for high-profile clients based across the [United] states."

Mr. Miller focuses his practice on all aspects of litigation. He has been retained by many Fortune 500 and other clients to represent them in litigation throughout the United States, including in Michigan, New York, New Jersey, Pennsylvania, Arkansas, Florida, Texas, Kentucky, Ohio, California, Colorado, Indiana, and Illinois.

Mr. Miller recently won an arbitration against Jimmy Johns in the amount of $4.8 million including a $1 million attorney fee award. He has never lost a trial, including verdicts in excess of $5 million, $10 million and $23 million and a split verdict on a Rule 23(c)(4) issue trial. Mr. Miller has also obtained in excess of $3 billion in settlements. These settlements are regularly among the top ten in Michigan each year, including a high-profile verdict in May, 2016 for 100% liability.

In October, 2019 Mr. Miller defended a consumer goods manufacturer against Plaintiffs asserting complex price discrimination and antitrust claims, and alleging millions of dollars in damages. Following a 3-week trial and seven hours of deliberations, a California jury returned a unanimous verdict in favor of his client, rejecting all of Plaintiffs' claims.

Mr. Miller has previously served as Co-President of the Detroit Chapter of the Federal Bar Association Antitrust and Securities Committees. He also serves on the Executive Committee for the Wayne State University Law School Board of Visitors and has served a Co-Chair of the American Bar Association Procedures Subcommittee on class actions and multi-district litigation. He lectures regularly on securities litigation at the University of Michigan School of Law. He has also served as an Adjunct Professor at the University of Detroit Law School teaching trial practice. In addition, Mr. Miller regularly speaks at continuing legal education seminars on securities fraud class actions. Mr. Miller also serves as a Master member of The Oakland County Bar Association Inns of Court.

Mr. Miller graduated third in his class from Wayne State University Law School, magna cum laude, in 1986. He was named to the honor society, Order of the Coif and he was an Editor of the Wayne Law Review. In 1986, Mr. Miller joined the Detroit law firm of Honigman Miller Schwartz and Cohn, where he was elected partner in 1990. In 1994, he formed his own firm.



Mr. Miller has been recognized as a top debater in the United States. He won first place at the Harvard University National Debate Tournament as a freshman at Georgetown University. He also represented Georgetown in a special international debating exhibition against the Oxford Debating Union of Great Britain.

Mr. Miller is a proud supporter of the Detroit Urban Debate League, a nonprofit that supports the creation of debate programs in under-served high schools; the University of Detroit Jesuit High School and Academy; The Joe Niekro Foundation, which is committed to aiding in the research and treatment of aneurysm patients and families; and Charlotte's Wings, a nonprofit that is dedicated to supporting ailing children in Southeast Michigan through donations of new books to the children and their families in hospital and hospice care.

**<u>EDUCATION:</u>**

**UNIVERSITY OF DETROIT JESUIT HIGH SCHOOL, 1979**

**GEORGETOWN UNIVERSITY, B.A., 1983**

**WAYNE STATE UNIVERSITY LAW SCHOOL, J.D., 1986**





| | **ROCHESTER** | **DETROIT** |
|---|---|---|
| | 950 W. UNIVERSITY DR. | 211 WEST FORT STREET |
| | SUITE 300 | SUITE 705 |
| | ROCHESTER, MI 48307 | DETROIT, MI 48226 |

248-841-2200 | WWW.MILLER.LAW



# EMILY E. HUGHES, PARTNER

✉ EEH@millerlawpc.com

Emily E. Hughes is a Partner at The Miller Law Firm, P.C. – one of the premier litigation law firms in the United States and Michigan's leading class action firm.  Miller Law has achieved over $3 billion in settlements, recoveries and/or verdicts on behalf of injured class members.

Ms. Hughes heads Miller Law's data-privacy practice and presently serves on Plaintiffs' Steering Committees on nationwide data-privacy class actions such as *Miller v. NextGen Healthcare, Inc.*, No. 23-cv-02043 (N.D. Ga) (member of Plaintiffs' Steering Committee and Third-Party Discovery Committee); and *In re: HealthEC LLC Data Breach Litig.*, No. 24-cv-00026 (D.N.J.) (member of Plaintiffs' Steering Committee and Offensive Discovery Committee).

Ms. Hughes also plays a central role in litigating the following data-privacy cases on behalf of Miller Law:

- *In re: Wright & Filippis, LLC Data Security Breach Litig.*, No. 22-cv-12908 (E.D. Mich.) (Firm appointment as Chair of Settlement Class Counsel, securing preliminary approval of a non-reversionary class settlement fund of $2,900,000 on January 4, 2024);
- *In re: Hope College Security Breach Litig.*, No. 22-cv-01224 (W.D. Mich.) (secured preliminary approval of non-reversionary class settlement fund of $1,500,000 on January 3, 2024);
- *In re: Flagstar December 2021 Data Security Incident Litig.*, No. 22-cv-11385 (E.D. Mich.) (Firm appointment to Plaintiffs' Executive Committee);
- *In re: Henry Ford Health System Data Security Litig.*, No. 23-11736 (E.D. Mich.) (Firm appointment as Interim Lead Counsel);
- *Drugich v. McLaren Health Care Corp.*, No. 23-cv-11736 (E.D. Mich.); and
- *In re: Lansing Community College Data Breach Litig.*, No. 23-00738 (W.D. Mich.).

In addition to Ms. Hughes' substantial data-privacy practice, she routinely litigates complex consumer and auto-defect class actions. Recently, Ms. Hughes played a key role in Miller Law's efforts as Co-Lead Class Counsel in *Cooper v. The 3M Company*, No. 17-cv-01062 (W.D. Mich.), resulting in a $54 million cash settlement approved in 2023. She also significantly contributed to Miller Law's role on the Plaintiffs' Steering Committee in *In re EpiPen*, No. 17-md-02785 (D. Kan.) ($609 million in settlements). In 2016, Ms. Hughes and her partner successfully obtained a unanimous jury verdict in favor of their clients in a partnership dispute following a six-day trial in the U.S. District Court for the Eastern District of Michigan. *See Blumbergy v. DocNetwork LLC, et al.*, No. 13-cv-15042. Further, Ms. Hughes played a substantial role in obtaining 100% recovery on behalf of a certified class of retirees under the civil enforcement provisions of ERISA. *See Davidson v. Henkel Corp.*, No. 12-cv-14103 (E.D. Mich.).

Ms. Hughes was selected to Michigan Super Lawyers in 2022 and 2023 and has been recognized as a "Rising Star" in Michigan Super Lawyers for 2010-2015.  Ms. Hughes is admitted to practice in Michigan, the U.S. District Court of the Eastern and Western Districts of Michigan, and the Sixth Circuit Court of Appeals.

**University of Michigan, B.A., 2001**

**University of Illinois College of Law, J.D., 2005, *cum laude***

